Elroy Lynn **WABASHA**, Petitioner and Appellant,

v.

**STATE** of South Dakota, Respondent.

No. 12655.

Supreme Court of South Dakota.

Argued Sept. 17, 1979.

Decided May 21, 1980.

---

Thomas M. Frankman of Willy, Pruitt, Matthews, Hurd, Farrell, Frankman & Johnson, Sioux Falls, for petitioner and appellant.

Margaret Crew, Asst. Atty. Gen., Pierre, for respondent; Mark V. Meierhenry, Atty. Gen., Pierre, on the brief.

DUNN, Justice (on reassignment).

This is an appeal from the trial court's denial of petitioner's request for post-conviction relief. We affirm.

Four days after petitioner was taken into custody by Yankton County authorities, he was taken before a law-trained magistrate, acting as a committing magistrate. He waived his rights to a preliminary hearing and was bound over for trial. He was arraigned before the circuit court the next day and entered a plea of guilty to a charge of first degree robbery. The following day he appeared for sentencing and was sentenced to fifteen years in the penitentiary. At the time, petitioner, who had a seventh or eighth grade education, was twenty years old.

The pro se petition alleged that (1) there was an unnecessary delay in prosecution; (2) there was no effective waiver of right to counsel at either the preliminary examination before the committing magistrate or at the arraignment; (3) at the arraignment, the trial court failed to advise petitioner of the nature and elements of the charge against him; and (4) at the sentencing, he was not advised of his right to appeal. The petitioner contends that these procedures

were defective and denied him due process of law under the federal and state constitutions.

The post-conviction trial judge concluded that petitioner had effectively waived counsel; that he had entered a voluntary and intelligent plea; that he had been informed of all the elements of the charge; and that the trial court had determined a sufficient factual basis for the plea. He further concluded that the sentencing was not in violation of SDCL 23–48–5.[1] He made no conclusion regarding delay in the prosecution, nor did petitioner propose any.

■■ Our initial finding is that no error was committed by failing to make a record of the preliminary arraignment. At the post-conviction hearing, the court received the Commitment for Trial and Certificate. This Commitment established that petitioner was informed of his constitutional rights and thereafter waived a preliminary hearing. In *People v. Losinger*, 331 Mich. 490, 50 N.W.2d 137 (1951), the Michigan Supreme Court held that the waiver of a preliminary examination is established by the return of the magistrate; the waiver of the accused need not be in writing. At a post-conviction hearing, the petitioner has the burden of proving that his constitutional rights have been denied. Petitioner's mere assertion that he does not remember what the magistrate said to him is insufficient. *State v. Roth*, 84 S.D. 44, 166 N.W.2d 564 (1969).

■ Moreover, the petitioner pleaded guilty to the charge, and under *State v. Mee*, 67 S.D. 335, 292 N.W. 875 (1940), such a plea constitutes a waiver of the right to a preliminary examination. In response, petitioner contends that he was threatened by a DCI agent with the maximum penalty and an habitual offender charge. At the post-conviction hearing, however, Yankton County Sheriff Carl Moser, who the petitioner admitted was present during the only conversation between petitioner and the DCI agent, testified that no such threat was made. The lower court accepted the

sheriff's testimony, and this court will not disturb a trial court's findings on post-conviction relief unless the evidence preponderates against them. *State v. Roth*, 84 S.D. 44, 166 N.W.2d 564. The petitioner has not met this burden, and we find that his guilty plea was voluntarily entered.

■ Likewise, petitioner's waiver of counsel was voluntary. The trial court not only informed him of his right to counsel but strongly encouraged him to accept the assistance of counsel. Petitioner declined the court's offer to appoint counsel.

At the arraignment, the information was read to the petitioner. It recited that petitioner took personal property from a named victim while pointing a handgun at him, thereby putting the victim in fear of immediate injury to his person. Next, petitioner responded affirmatively to questions by the court as to whether he had robbed the victim and whether he possessed a handgun at the time. Petitioner now claims that because the question did not contain a specific query as to whether the gun was pointed at the victim it is unclear whether the gun was actually employed in the robbery or merely in the getaway.

■ It is well-established that the trial court must develop a factual basis for a guilty plea before it may be accepted. *Nachtigall v. Erickson*, 85 S.D. 122, 178 N.W.2d 198 (1970). This is not done in a vacuum, however. The information was written in language understandable to a lay person and was read to petitioner. Combining the information's allegations with petitioner's affirmative answers, the trial court properly inferred that the petitioner committed the offense with which he was charged. Although the petitioner is not well educated, he is not unfamiliar with the criminal justice system, and we are convinced that he understood the nature of the charge. The fact that petitioner stated, in response to the court's question, that he was pleading guilty to "armed robbery" instead of using the term "first degree robbery" does not sway us; we remain con-

---

1. Repealed by 1978 Sess.L. ch. 178, § 577, and reenacted in pertinent part as SDCL 23A–27–1.

vinced that the nontechnical language of the information clearly explained the nature of the charge.[2] *State v. Holmes*, 270 N.W.2d 51 (S.D.1978).

■ The petitioner objects to the fact that he was sentenced the day after his guilty plea was accepted. It is true that SDCL 23–48–5[3] requires a two-day period between the guilty plea and the sentencing; however, defendant made no objection to being sentenced on the day after his plea, and he did not indicate at the post-conviction hearing how he was prejudiced in any way by failure of the court to delay sentencing for forty-eight hours. In the absence of testimony that this additional time would have been used to withdraw his plea or take some other action in his own behalf, we see no prejudice requiring post-conviction relief.

The petitioner's remaining arguments are all without merit.

The judgment denying post-conviction relief is affirmed.

WOLLMAN, C. J., and FOSHEIM, J., concur.

MORGAN, J., concurs specially.

HENDERSON, J., dissents.

MORGAN, Justice (concurring specially).

I concur in the result. I do not agree that this case is distinguishable from *State v. Spirit Track*, 272 N.W.2d 803 (S.D.1978); but the arraignment was held prior to that decision. Although we did not announce in *Spirit Track* whether the holding was prospective or retrospective following the reasoning of this court in *Crew v. Nelson*, 88 S.D. 162, 216 N.W.2d 565 (1974), it appears that *Spirit Track* should be given prospective effect only.

**2.** This arraignment and plea took place in May of 1977, and previous to our decision in *Spirit Track v. State*, 272 N.W.2d 803 (S.D.1978), where the requirements of *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), were stated with approval. *Spirit Track* also differs in that we were dealing there

HENDERSON, Justice (dissenting).

I respectfully dissent.

A review of the arraignment transcript discloses that defendant's plea of guilty was not voluntarily and intelligently entered as mandated in *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). In *Nachtigall v. Erickson*, 85 S.D. 122, 178 N.W.2d 198 (1970), this Court acknowledged that a plea of guilty cannot stand unless the record in some manner indicates that the defendant was advised and had a sufficient understanding of the nature of the charge against him and the range of possible punishment for such crime. The record reveals that the information was read defendant. The circuit judge, however, failed to explain the elements of the offense to the petitioner. Furthermore, the contents of the information were not set forth in the arraignment transcript. The post-conviction trial judge concluded that petitioner had effectively waived counsel and entered a voluntary and intelligent plea, that he had been informed of all the elements of the charge, and that the trial court had determined a sufficient factual basis for the plea. In reviewing a post-conviction relief record, we are not bound by the clearly erroneous rule to such parts of the record as are nonverbal. *National Surety Corporation v. Shoemaker*, 86 S.D. 302, 195 N.W.2d 134 (1972).

The question of an effective waiver of a federal constitutional right in a proceeding is governed by federal standards. *Boykin v. Alabama*, supra. For a waiver to be valid under the Due Process Clause, it must be an intentional relinquishment or abandonment of a known right or privilege. *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). If a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void. *Boy-*

with a defendant who did not admit to the crime with which he was being charged; he stated only that he did not remember the acts charged.

**3.** See note 1.

kin. In *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), the United States Supreme Court noted that because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts. The Court in *McCarthy* indicated that:

> The nature of the inquiry required by Rule 11 must necessarily vary from case to case, and, therefore, we do not establish any general guidelines other than those expressed in the Rule itself. As our discussion of the facts in this particular case suggests, however, where the charge encompasses lesser included offenses, personally addressing the defendant as to his understanding of 'the essential elements of the charge to which he pleads guilty would seem a necessary prerequisite to a determination that he understands the meaning of the charge. In all such inquiries, "[m]atters of reality, and not mere ritual, should be controlling." (citing *Kennedy v. United States*, 397 F.2d 16, 17 (C.A. 6th Cir. 1968)).

*Id.* at 467, 89 S.Ct. 1171–72, 22 L.Ed.2d 426. Seven years after *McCarthy* the United States Supreme Court in *Henderson v. Morgan*, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976), held that a plea cannot be deemed voluntary unless the defendant receives real notice of the true nature of the charge against him. Thus, the Court concluded in *Henderson* that a defendant who was not advised that intent to cause death was an element of the offense of second-degree murder was not afforded due process of law. The Court in *Henderson* eventually accepted petitioner's argument that the voluntariness of a plea should be examined in light of the totality of the circumstances to determine whether the substance of the charge was conveyed to the accused. In other words, in some circumstances, the nature of the offense cannot be conveyed to a defendant by the mere ritualistic litany of the formal elements of an offense contained in the information or indictment.

In *State v. Holmes*, 270 N.W.2d 51 (S.D. 1978), we addressed the issue of whether a defendant was sufficiently apprised of the nature of the charge against him where only the indictment was read. In holding that the defendant had not been denied due process, the Court observed that the indictment contained all the elements of the offense and the terminology of the indictment was not technical but could be essentially understood by a layperson. The Court also noted that the judge had explained the allegation in great detail, the defendant had an above-average intelligence, he had the advice of counsel, and he had been in court on previous felony charges and, thus, had a better understanding of court proceedings than others who had not been in court before.

Under the totality of the circumstances in the instant case, however, the mere reading of the information did not sufficiently apprise defendant of the nature of the offense charged against him. This case is clearly distinguishable from *Holmes*. Defendant, a 20-year old Native American, had only an eighth-grade education and a reading level of the third or fourth grade. He entered his plea of guilty unaided by counsel. In *State v. Sewell*, 69 S.D. 494, 12 N.W.2d 198 (1943), this Court stated that where a defendant unaided by counsel enters a guilty plea, it should not be accepted without painstaking explanation of the rights afforded the accused by law, and of the extreme consequences his plea may entail, in ascertainment that he is acting with volition and understanding. Many Native Americans labor to understand each word in the courtroom. When put in a court setting, they are ordinarily terrified at the white man's justice. Procedures are an enigma to them. It behooves us all in the judicial branch of government to be particularly conscious of their cultural lag. A trial judge must bend over backwards to explain—in simple language—the legal rights required to be explained to a Native American defendant. Considering the defendant's intelligence, education, age, and experience, a ritualistic litany of the formal legal elements of the offense did not suffice

in conveying to defendant the nature of the offense to which he pleaded guilty. The trial judge not only failed to actively canvass the defendant as to his understanding, but also failed to explain the essential elements of the offense to which he pleaded guilty.

Furthermore, in reviewing the transcript of the arraignment, it is apparent that the defendant was asked to enter his plea of guilty prior to being advised of his other constitutional rights mentioned in *Boykin* which include: (1) the privilege against compulsory self-incrimination; (2) the right to a jury trial; and (3) the right to confront one's accusers. The fact that it was not until after defendant entered his plea of guilty that the court proceeded to advise him of his constitutional rights militates against an intelligent and voluntary waiver. The arraignment transcript bears this out.

THE COURT: Now, I should advise you, Mr. Wabasha, *if you had entered your plea of not guilty*, in other words denied the commission of this offense, you would be entitled to a trial by jury; do you understand this? (Emphasis added).

MR. WABASHA: Yes.

.    .    .    .    .

THE COURT: You further understand that during the course of this trial you would have the right to confront the witnesses who would appear and testify against you. Now by this I mean, you'd have the right to see them on the stand, under oath, and hear what they had to say relative to these charges; do you understand this?

MR. WABASHA: Yes.

THE COURT: And do you further understand that either you or your counsel, if you desired one, would have the right to cross-examine these witnesses? Now, by this I mean, you'd have the right to question them relative to anything they've testified to. Do you understand this?

MR. WABASHA: Yes.

.    .    .    .    .

THE COURT: And do you further understand that during the course of this trial under no circumstances could you be compelled to take the stand and testify yourself if you didn't want to? By that I mean, no one could make you testify if you didn't want to; do you understand this?

MR. WABASHA: Yes.

THE COURT: And do you further understand that if you choose not to testify there could be no inference of guilt drawn from the fact that you did not? Do you understand this?

MR. WABASHA: Yes.

While I do concede that these rights were later explained by the judge, these should have been thoroughly explained prior to accepting his plea of guilty. The mere fact that defendant was again asked if he was still pleading guilty to which he responded, "Yes," does not show an intentional relinquishment of a known right or privilege under these circumstances. It is understandable that having once pleaded guilty to the charge, the defendant would be reluctant to suddenly withdraw his plea, fearing that it would be received with skepticism. The effect of withdrawing his plea was never explained to him.

I do not condone robbery, but I do adhere to a system of justice that accords a man his rights under the law. Therefore, this case should be reversed and remanded with instructions for the trial court to withdraw defendant's plea of guilty and to rearraign him.