**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Albert James GOODHEIM,
Defendant-Appellant.**

No. 80–1408.

United States Court of Appeals,
Ninth Circuit.

Sept. 7, 1982.

Thomas E. Kotoske, Palo Alto, Cal., for
defendant-appellant.

Henry Rossbacher, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before FLETCHER, PREGERSON, and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge.

█ Goodheim appealed his conviction on several counts which required, as a predicate, proof of a previous felony conviction. We reversed and remanded for an evidentiary hearing to determine whether Goodheim's guilty plea on the prior felony was voluntary and intelligent, in compliance with *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). *United States v. Goodheim*, 651 F.2d 1294 (9th Cir. 1981). The reasons for the remand and the facts relevant to the additional issues which we reserved pending completion of the hearing on remand are fully set forth in that opinion.

On remand, the district court complied with our mandate and held an evidentiary hearing. The government presented two witnesses, the prosecutor and defense counsel in the proceeding in which Goodheim's guilty plea was entered. Each testified that he had no present specific recollection of the original proceeding. Both witnesses, however, testified in detail as to the custom and practice of the state trial judge who accepted Goodheim's plea of guilty. This testimony was based on their numerous personal appearances before the judge. Defense counsel also testified as to his practice in respect to representation of criminal defendants, and in particular as to the advice he gave individuals entering guilty pleas.

The district court ruled that the testimony of these two witnesses sufficiently demonstrated the "regularity of the proceedings," as to guilty pleas accepted by the state court judge, to satisfy the government's initial burden. Goodheim thereafter introduced an affidavit which described his recollection of the proceedings and was cross-examined by the government.

The district court found that the testimony of the government witnesses was truthful and credible and that Goodheim's testimony was neither truthful nor credible. The court determined that the guilty plea in question had been voluntarily and intelligently made.

Goodheim argued below that the government had not met its burden because neither of its witnesses had a specific recollection of the actual proceedings at issue. We do not agree.

Goodheim's guilty plea was entered in 1964. We have previously recognized that when a conviction is of relatively ancient vintage, evidence of the trial court's practice is precisely the evidence which the government will have at its disposal:

> When the prior conviction is a number of years old and the record of the taking of the plea is silent, it may frequently occur that there will be no evidence available on compliance with the *Boykin* procedures other than the defendant's testimony and the custom of the trial court in taking pleas.

*United States v. Pricepaul*, 540 F.2d 417, 423 (9th Cir. 1976).

Compliance with *Boykin* does not require that the trial court specifically articulate each of the three rights that is waived upon entry of a guilty plea. *Wilkins v. Erickson*, 505 F.2d 761, 763 (9th Cir. 1974). All that is required is that the record " 'affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily.' " *Id.* (quoting *Brady v. United States*, 397 U.S. 742, 747–48 n.4, 90 S.Ct. 1463, 1468 n.4, 25 L.Ed.2d 747 (1970)).

Testimony describing with specificity the actual proceedings would, of course, directly establish whether the guilty plea had been voluntarily and intelligently made. Testimony as to the general practice of a trial judge does so inferentially. Such inferential evidence would not, in our view, be sufficient unless it were clear and convincing.

In the present case, the government offered the testimony of the prosecuting at-

torney and the defense counsel, both of whom had frequently appeared before the trial judge. Their testimony clearly and convincingly established the fact that the trial judge consistently followed the practice of painstakingly probing a defendant's understanding of the meaning and consequences of a guilty plea. Both witnesses testified that, in their experience, the trial judge had never deviated from this practice. On this evidence, we conclude that the district court correctly ruled that the government carried its burden of going forward.

Goodheim was thoroughly impeached on cross-examination. At best, his recollection of the actual proceedings was no greater than that of the government's witnesses. We cannot say that the district court erred in its finding as to Goodheim's credibility. In the absence of any credible testimony rebutting the inference that the trial court adhered to its consistent practice in respect to Goodheim's plea, we hold that the district court correctly determined that the plea was voluntarily and intelligently made.

■ Goodheim raised several other issues that we did not discuss in our earlier opinion because of our decision to remand. We decide them now. First, he argues that the government failed "to prove the existence of an operable firearm as alleged in the indictment." Goodheim asserts that the government must be held to the language of the indictment and to its own definition of a firearm, as evidenced by testimony of an expert witness and the jury instructions. Accordingly, Goodheim argues that "the government must prove beyond a reasonable doubt that the firearms in question were operable."

The statutory language defining "firearm" for the purposes of 18 U.S.C. § 922(h)(1) and § 1202(a)(1) does not require that the weapon be operable. 18 U.S.C. § 921(a)(3) (1976); 18 U.S.C. app. § 1202(c)(3) (1976).[1] Moreover, Goodheim stipulated at trial that each of the weapons was a firearm as defined in sections 921(a)(3) and 1202(c)(3). The district court instructed the jury regarding the definition of "firearm" by reading from the applicable statutes. The government's expert witness did not define "firearm" in any manner inconsistent with the applicable statute; he specifically stated that a "firearm" within the statutory meaning need not be operable.

There is no indication in the record that the government undertook to define "firearm" as an operable weapon. Nevertheless, Aiello, the firearms dealer, testified that he had test-fired all three weapons, and we believe that his testimony was sufficient to establish "operability." We find Goodheim's argument without merit.

Goodheim next argues that the district court erred in preventing him from testifying as to his state of mind with regard to the charge in Counts Two and Four that he *knowingly* made a false and fictitious statement. Goodheim misquotes the record. After a colloquy between court and counsel regarding the relevance of Goodheim's testimony, the court stated, "Frankly, if [the prosecutor] is going to assert no objection, then I'm *not* going to assert one of my own." (Emphasis added). Defense counsel then continued his line of questioning. Accordingly, we reject Goodheim's argument.

Goodheim also asserts that "a serious question developed as to the identity of the Defendant as the person who actually received certain firearms on the dates alleged

1. 18 U.S.C. § 921(a)(3) defines "firearm" for the purposes of § 922(h)(1). It provides:

The term "firearm" means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm.

18 U.S.C. app. § 1202(c)(3) defines firearm for the purposes of § 1202(a)(1). It provides:

"[F]irearm" means any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; the frame or receiver of any such weapon; or any firearm muffler or firearm silencer; or any destructive device. Such term shall include any handgun, rifle, or shotgun . . . .

in the indictment."[2] Consequently, he argues that it was prejudicial error for the district court to allow Aiello and Agent Newby to identify Goodheim from photographs because the government did not comply with *United States v. Brown*, 501 F.2d 146 (9th Cir. 1974), *rev'd on other grounds sub. nom. United States v. Nobles*, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975).

On redirect examination, Aiello identified a series of photographs[3] as those that he had been shown by Agent Newby. Aiello identified the photograph he had previously selected as that of the individual who had purchased the three weapons. Over defense counsel's objection, he further identified the person in the photograph as Goodheim. Agent Newby testified that he had shown the series of photographs to Aiello, that Aiello had selected a particular photograph, and that the photograph selected was a picture of Goodheim. No objection was made to Newby's testimony.

■■■■ *Brown* is inapposite. It relates to the question of when expert testimony is permissible. Here, neither Aiello nor Agent Newby testified as experts. Opinion testimony by lay witnesses is admissible if it is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." Fed.R.Evid. 701. The identification by a non-expert percipient witness of a photograph as that of the perpetrator of an offense is permissible, so long as the proper safeguards and procedures are followed. *See Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). We reject Goodheim's argument.

■■■■ Goodheim also argues that the district court erred in overruling his objection to the government's inquiry into aliases

used by Michael Fischer. Goodheim asserts that such testimony was irrelevant. We disagree.

On direct examination, defense counsel asked Goodheim when he had started using the name "Alexander Fischer." Goodheim replied that his best friend, who was "like a brother," was named Michael Fischer, and that Goodheim simply assumed his last name. Goodheim testified further to his use of the name "Fisher." Apparently, defense counsel elicited this information to show Goodheim's state of mind with regard to his use of the name "Alexander Fischer" on the firearms forms.

In light of this initial testimony, Goodheim can not complain that the government's further inquiry into the names used by Michael Fischer was irrelevant. By questioning Goodheim, the government established that Michael Fischer had also used the name "Fisher" and that Goodheim had used the name "Alexander Fisher." Apparently, the government sought to establish that Michael Fischer had used different though similar names interchangeably, and that Goodheim had assumed Fischer's surnames, not simply because he regarded him as a brother, but for the purpose of using aliases. Goodheim's argument that the line of questioning was irrelevant is without merit. In any event, any error in this respect would be harmless. *See United States v. Valle-Valdez*, 554 F.2d 911 (9th Cir. 1977).

■■■■ Finally, Goodheim argues that the consecutive sentences he received on Counts One and Two are constitutionally infirm because they violate the proscription against multiple punishments for the same offense. In Count One, Goodheim was charged, as a convicted felon, with receipt of a firearm that had been shipped and

2. The record does not support Goodheim's characterization of the evidence. On direct examination, Aiello identified Goodheim as the person to whom he *sold and delivered the firearms*. Although Aiello testified that Goodheim was always accompanied by someone when he came in to pick up the guns, he never wavered in his identification. The photospread identifi-

cation testimony was apparently offered to rebut defense counsel's suggestion that Aiello had some help from the government in making the identification.

3. The photographs were offered and received in evidence without objection.

transported in interstate commerce, in violation of 18 U.S.C. § 922(h)(1) (1976). In Count Two, Goodheim was charged with making a false and fictitious written statement in connection with the acquisition of a firearm, in violation of 18 U.S.C. § 922(a)(6) (1976). The same firearm was involved in each count.

The Supreme Court has recently reaffirmed its rule in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), as the proper standard for determining whether two statutory offenses may be punished consecutively. *Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981); *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). In *Blockburger*, the Court held:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

284 U.S. at 304, 52 S.Ct. at 182.

The offenses charged in Counts One and Two are separate offenses because each requires proof of at least one different fact:

> [Count One (18 U.S.C. § 922(a)(6))] required the making of a false statement in connection with the acquisition or attempted acquisition of a firearm. The offense is committed whether or not a firearm is acquired. [Count Two (18 U.S.C. § 922(h)(1))] is violated if an individual received a firearm that is shipped in interstate commerce. There is no necessity of showing that the firearm was acquired by making false statements to a firearms dealer during a purchase. Receipt is unique to Count Two just as a false statement is unique to Count One.

*United States v. Gardner*, 605 F.2d 1076, 1077 (8th Cir. 1979). *See United States v. Gardner*, 579 F.2d 474, 476–77 (8th Cir. 1978).

Consequently, under the rule of *Blockburger*, sections 922(a)(1) and 922(h)(1) constitute separate offenses which may be pun-

ished consecutively. With regard to double jeopardy, "the question of what punishments are constitutionally permissible is not different from the question of what punishment the Legislative Branch intended to be imposed. Where Congress intended, as it did here, to impose multiple punishment, imposition of such sentence does not violate the Constitution." *Albernaz*, 450 U.S. at 344, 101 S.Ct. at 1145. Thus, the sentences imposed here were lawful.

AFFIRMED.