STATE of South Dakota, Plaintiff
and Appellee,

v.

Donald Eugene MOELLER, Defendant
and Appellant.

No. 17886.

Supreme Court of South Dakota.

Argued March 15, 1993.

Decided Jan. 26, 1994.

Mark Barnett, Atty. Gen., Ann C. Meyer, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Patricia C. Riepel, Office of Public Defender, Sioux Falls, for defendant and appellant.

TICE, Circuit Judge.

Donald Eugene Moeller (Moeller) appeals his conviction of being a habitual offender. We affirm.

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

On the evening of January 20, 1990 when the victim, Tracy Warner (Tracy), was sitting in the living room of her apartment watching television and working on a latch hook project with her baby daughter asleep in the next room, Moeller entered her apartment. Although Moeller and Tracy had briefly met previously, she could not recall his name.

After ten or fifteen minutes, Moeller asked if Tracy would mind him coming back another time, and departed. Later that evening, Moeller "tapped lightly" on the apartment door and entered unannounced. At the time, Moeller was carrying a bottle of Jack Daniels. He asked if he could watch television with Tracy and she acquiesced.

Subsequently, upon returning from the kitchen, Moeller stood over Tracy in her chair and ran a knife, with a three and one half inch blade, up and down Tracy's breast while ordering, "lift up your shirt or I'm going to cut you, show them to me or I'm going cut you." Thereafter, Moeller alternated running the knife over Tracy's arm, and her breast.

Upon being warned by Tracy, Moeller retorted, "who do you think is going to get cut

first, you or her." At that point, fearing for the safety of her baby and herself, Tracy attempted to grab the knife and sustained permanent injury to two fingers because of lacerated tendons and nerves. Tracy then broke free from Moeller and ran out of her apartment door to summon help. After summoning help and upon returning to her apartment she saw Moeller leaving and memorized his vehicle's license plate number.

The state presented evidence of Tracy's eye-witness identification, her memory of the license plate number and the blood stain on Moeller's clothing which was consistent with Tracy's blood type. Moeller did not testify or call witnesses on his behalf. He was found guilty on two counts of aggravated assault in violation of SDCL §§ 22-18-1.1(2) and (5).

Through the state's part two information and amendments Moeller was charged with being a habitual offender for the following convictions: January 1973 conviction (72–139) for grand larceny; May 1974 conviction for escape; March 1976 conviction (76–55) for burglary in the third degree; March 1976 conviction (76–54) for grand theft; April 1979 conviction (Cr. No. 1283, Campbell County, Wyoming) for aggravated assault; and, the 1983 conviction (83–209) for grand theft. The Honorable Richard D. Hurd denied Moeller's motion to vacate criminal record numbers 76–54, 76–55 and 72–139. However, the court did grant Moeller's motion to strike the May 1974 conviction for escape.

On January 8, 1992, the state and Moeller filed a stipulation and agreement acknowledging that Moeller was the person who actually committed the offenses (identity) in Minnehaha County criminal file numbers 83–209, 76–54, 76–55, and 72–139. However, Moeller did not stipulate "to anything with regards to the validity of his 1976 convictions." At the motion hearing on November 25, 1991 Moeller did not raise any challenge below to the validity of the record in Minnehaha County record number 83–209. Moeller's sentence was enhanced based upon these four prior convictions.

Moeller contends that the guilty pleas entered in criminal record numbers 76–54 and 76–55 were not made voluntarily, intelligently, or knowingly;[1] that the record is silent concerning the factual basis for these guilty pleas; that he was never advised as to the penalty he faced on these charges; that the guilty pleas are involuntary because the record is silent as to whether he was advised or aware of the forty-eight hour waiting period between plea and sentencing; that the 1976 guilty pleas were involuntary, based upon the "totality of the circumstances" in that he was twenty-three years old and had an eighth grade education at the time of the pleas; that the burden of proof described in *Stuck v. Leapley*, 473 N.W.2d 476 (S.D.1991) violated due process; that the trial court improperly permitted the state to amend the habitual offender information for a second time; and, that the trial improperly denied his motion in limine regarding the victim's state of mind as relevant to the charge.

While the record below indicates there are no transcripts for the 1976 convictions, the record is also far from silent. The March 17, 1976 minutes of the combined plea proceedings disclose the following:

> The court advised the defendant as to the nature of the charges. The defendant said he understood.
>
> The court advised the defendant as to his legal and constitutional rights to a jury trial, have witness testify on his own behalf, etc. and by a plea of guilty he would wave all of these rights. The defendant said he understands.
>
> Mr. Breit and Mr. Sabers [Moeller's attorneys] said that they are satisfied that the defendant understands.
>
> Being asked by the court, the defendant said he was ready to plead and entered his oral plea of not guilty to Cr. 76–54 Ct. 1—burglary 3rd degree; an oral plea of guilty to Cr. 76–54 Ct.—2—grand larceny. The court questioned the defendant as to his pleas. The court received the defendants plea of not guilty to Ct. 1 and Guilty to Ct. 2. The defendant entered an oral plea of guilty to Cr. 76–55 Burglary 3rd Degree.

1. Moeller apparently did not order transcripts in his combined 1976 plea proceedings because he did not appeal the convictions in either state or federal court.

The court questioned the defendant as to the guilty plea. The court received the defendant's plea of guilty.

The certified judgment relating to Cr. 76–54 states "the said defendant was informed by the court of the nature of the information and of his plea, and was asked by the court whether he had any legal cause to show why judgment should not be pronounced against him." The judgment states that the court fully advised the accused of his "rights in the premises." [2] Likewise, the certified judgment and sentence pertaining to Cr. 76–55 states that:

Upon such arraignment said defendant having then been first advised of his constitutional and statutory rights and having waived such rights and duly entered in open court his oral plea of guilty of the charge in said information contained; and the Court having examined the Defendant, finds that such plea was voluntary and not made under duress or coercion; the Court accepts such plea of guilty ...

Moreover, in the record below there was also testimony of the former Minnehaha County states attorney, Gene Paul Kean, to establish the standard practice or customary procedure employed by the Honorable R.J. Patterson, who was deceased by the time the defendant raised his Boykin challenges below, approximately fourteen years after the entry of the pleas. The testimony elicited from Kean established that Judge Patterson would unwaveringly advise each and every defendant of their statutory and constitutional rights from "plastic laminated sheets." At the end of each right Judge Patterson would ask the defendant "do you understand that." Kean testified that Judge Patterson would inform each defendant of their right to a jury trial, to confront witnesses in open court, to cross-examine witnesses and remain silent in accordance with Boykin, in addition to going

into other matters, "that weren't mandatory but he used to throw in all the time."

With regard to the advisement of possible penalties for the 1976 guilty pleas, Kean testified that:

[Judge Patterson] used to talk about the punishment and would want to know about the maximum punishment and the proper maximum punishment. He would check it with the code book, even, you know, all the time. And then he would ask that the defendant repeat it back to him what the punishment was both as to jail or the prison time, fines that could be levied, used to even talk about forfeitures of rights, you know, like use of fire arms and things like that on occasion.

I.

THE TRIAL COURT PROPERLY USED THE GUILTY PLEAS ENTERED BY MOELLER TO ENHANCE THE SENTENCE UNDER THE HABITUAL OFFENDER STATUTES.

■ As a matter of federal constitutional law, Moeller has the unequivocal right to trial by jury, the privilege against self-incrimination, the right to confront and cross-examine witness and to be represented by counsel. *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). The *Boykin* rights to jury trial, against self-incrimination, and confrontation are of such importance in our system of justice, that on direct appeal from a conviction the conviction cannot stand if the record is devoid of a knowing and intelligent waiver of these rights.

■ Unfortunately the reference to a "silent record" has been viewed by many to be a basis to challenge the validity of convictions

2. SDCL 23–35–19 (which governed the entry of plea of guilty under South Dakota law in 1976) provided as follows:

Upon the arraignment of such person and before permitting an entry of the plea of guilty it shall be the duty of the judge before whom the accused may be brought to fully advise such person of his rights in the premises, and

if it appears to the satisfaction of such judge that the accused has been regularly held to answer upon the offense charges and is acting of his own free will and accord in the matter, such judge shall there upon receive such plea of guilty of the offense charges in the information.

*other than from a direct appeal.* It is our hope to clarify the law and procedure for examination of prior convictions under circumstances not involving a direct appeal. As the chronological and procedural challenge to a conviction becomes more removed from the conviction itself, the court must exercise decreasing scrutiny in the review of constitutional issues. There is an inverse relationship between the sensitivity of the courts to constitutional protection and the procedural and chronological distance from the original conviction. Challenges to distant convictions strike at finality, and it is of paramount importance to remember that:

> One of the law's very objects is the finality of its judgments. Neither innocence nor just punishment can be vindicated until the final judgment is known. *"Without finality, the criminal law is deprived of much of its deterrent effect."* [citations omitted]. And when a habeas petitioner succeeds in obtaining a new trial, the " 'erosion of memory' and dispersion of witnesses that occur with the passage of time," [citation omitted] prejudice the government and diminish the chances of a reliable criminal adjudication.

*McCleskey v. Zant,* 499 U.S. 467, 491, 111 S.Ct. 1454, 1468, 113 L.Ed.2d 517, 542 (1991), (emphasis added). *See also Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Our highest Court noted that "collateral review of a conviction extends the ordeal of trial for both society and the accused," ever-worsening during each subsequent collateral proceeding, and breeding perpetual disrespect for finality of convictions and necessarily resulting in disparagement of the entire criminal justice system. *McCleskey, supra,* 499 U.S. at 491, 111 S.Ct. at 1469, 113 L.Ed.2d at 543, (quoting *Engle v. Isaac,* 456 U.S. 107, 126–127, 102 S.Ct. 1558, 1571, 71 L.Ed.2d 783, 799–800 (1982)). Moreover,

> [a] procedural system which permits an endless repetition of inquiry into facts and law in a vain search for ultimate certitude implies a lack of confidence about the possibilities of justice that cannot but war with the underlying substantive commands. . . .

There comes a point where a procedural system which leaves matters perpetually open *no longer reflects humane concern but merely anxiety and a desire for immobility.*

*Id.* (emphasis added) (internal quotations and citation omitted). Such perpetual review "give[s] litigants incentives to withhold claims for manipulative purposes [ . . . and] establish[es] disincentives to present claims when evidence is fresh". *Id. Cf. State v. Aspen,* 412 N.W.2d 881 (S.D.1987), (Chief Justice Miller, dissenting). Moreover, in addition to undermining confidence in the integrity of court procedures, these inroads on finality increase the volume of judicial work, inevitably delaying and impairing the orderly administration of justice, *Hill v. Lockhart, supra,* which directly contravenes one of the ends of *Boykin,* to wit: to "forestall [the] spin-off of collateral proceedings that seek to probe murky memories". *Boykin v. Alabama,* 395 U.S. at 244, 89 S.Ct. at 1712–13, 23 L.Ed.2d at 280.[3]

■ Likewise, this Court, acting in our appellate function on the cold and indeed ancient record before us, cannot presume greater insight into the defendant's "understanding of his rights, his waiver of counsel, and his plea of guilty than that of the other courts that have considered this case." *Boyd v. Dutton,* 405 U.S. 1, 4, 92 S.Ct. 759, 761, 30 L.Ed.2d 755, 759 (1972), (Justice White, dissenting). The likelihood is minuscule, that new judicial scrutiny, one and a half decades later, will be conducive to dependable fact finding or will enlarge upon the evidence already considered. *Id.*

■ While the defendant's right to an attorney is of equal importance to a defendant's *"Boykin* rights," the defendant must show that he was significantly prejudiced because he did not have an attorney. We will not imprison the defendant in his rights. *State v. Jenner,* 451 N.W.2d 710, 720 (S.D. 1990). "It is well settled that a defendant may affirmatively waive constitutional rights to a jury trial, to confront and cross-examine witnesses, and to the Fifth Amendment privilege against self incrimination." *U.S. v. Ru-*

---

**3.** The court specifically noted that *a majority of criminal convictions are obtained after a plea of* guilty *and that they should be insulated from attack.*

*tan,* 956 F.2d 827, 829 (8th Cir.1992). The defendant may also waive the right to counsel. *Id.* Thus, upon a guilty plea, the absence of an attorney is not, in and of itself, a basis for setting aside a prior conviction. The defendant will not be allowed to merely rely on a silent record or the mere lack of an attorney to establish a constitutional error. There must be an affirmative showing of a specific denial of the right to counsel or a failure to advise the defendant of this right when one challenges a prior conviction. While *Argersinger,* and *Faretta,* require a detailed explanation of the dangers of self-representation at a trial or evidentiary proceeding, such advisement on the dangers of self-representation *is not required* for a valid waiver of the right to counsel when a defendant enters a plea of guilty to a criminal charge. *State v. Cashman,* 491 N.W.2d 462 (S.D.1992). *"By definition, a defendant who pleads guilty relinquishes his defense. He, therefore, does not need to be examined as to his understanding of courtroom procedure."* *Id.* at 464 *quoting Stano v. Dugger,* 921 F.2d 1125, 1148–49 (11th Cir.1991). Any other requirement would "fail ... to make common sense" and eviscerate the "chief virtues of plea agreements [—] speed, economy and finality." *Rutan, supra,* 956 F.2d at 829. It is unreasonable to expect a trial court to explain the defendant's rights with the same fervor to one charged with disorderly conduct, as the court would to a defendant facing a murder charge. In point of fact, where jail is not imposed upon a defendant on a misdemeanor charge, he is not, constitutionally, entitled to counsel. *Scott v. Illinois,* 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979); *Argersinger v. Hamlin, supra. See also Moore v. Missouri,* 159 U.S. 673, 16 St.Ct. 179, 40 L.Ed. 301, (1895).

▮ Upon a *direct appeal* from a conviction the defendant must be given all presumptions and protections possible under our constitution. However, when the proceeding before the court is in the nature of a collateral attack, as in a habeas corpus action or a challenge to the validity of predicate convictions, it becomes subject to less intense scrutiny upon review. There is "no principal of law better settled, than that every act of a court of competent jurisdiction shall be presumed to have been rightly done, until the contrary appears." *Parke v. Raley,* 506 U.S. ——, ——, 113 S.Ct. 517, 523, 121 L.Ed.2d 391, 404 (1992). The defendant here, by definition, has collaterally attacked his previous convictions, not contending that he was innocent of the predicate convictions, but seeking to deprive them of their normal force and effect for enhancement purposes. "On *collateral* review, we think it defies logic to presume from the mere unavailability of a transcript (assuming no allegation that the unavailability is due to governmental misconduct) that the defendant was not advised of his rights." *Id.,* 506 U.S. at ——, 113 S.Ct. at 524, 121 L.Ed.2d at 404. (emphasis added).

"[E]ven when a collateral attack on a final conviction rests on constitutional grounds, the presumption of regularity that attaches to final judgments makes it appropriate to assign a proof burden to the defendant." *Id.,* 506 U.S. at ——, 113 S.Ct. at 524, 121 L.Ed.2d at 405. The state is not required, by the due process clause, to adopt one procedure over another because it may produce results more favorable to the accused. *Id.* When a defendant challenges the validity of a previous guilty plea, "the government will not invariably, or perhaps even usually, have superior access to evidence ... [t]he defendant may be the only witness who was actually present at the earlier proceeding." *Id.,* 506 U.S. at ——, 113 S.Ct. at 524, 121 Ed.2d at 405.

▮ In *Stuck v. Leapley, supra,* we set forth the fundamental pattern of shifting burdens in the process for testing the validity of predicate convictions. To clarify the process, we require the state to first establish that there is a document which appears on its face to be a valid judgment. Upon such a showing by the state the doctrine of "presumption of regularity" is then applied, and unless the defendant presents credible evidence that there is some constitutional infirmity in the judgment it must stand. *State v. King,* 400 N.W.2d 878 (S.D.1987). Once the judgment is shown to be facially valid by the state, the burden of proof then shifts to the defendant to establish that there is a constitutional defect in the substance of

the rights he should have been afforded by the plea taking court. Putting the burden of production upon the defendant is a reasonable middle ground approach, and has been recognized as constitutionally valid by the United States Supreme Court. *Parke, supra.* The Kentucky procedure, which we have previously noted to be parallel to our procedure, *State v. King, supra, Stuck v. Leapley, supra,* "requires the defendant to produce evidence of invalidity" once the fact of conviction has been shown by the state. *Parke, supra,* 506 U.S. at ——, 113 S.Ct. at 525, 121 L.Ed.2d at 406.

 Raising a challenge to a prior conviction requires the defendant do more than just make a naked claim. He must initiate a challenge by presenting some credible evidence "through his testimony or other affirmative evidence." *Dunn v. Simmons,* 877 F.2d 1275 (6th Cir.1989), (Circuit Judge Ryan, concurring in part; dissenting in part). Silent records will not create a presumption that prior convictions are unconstitutional. *State v. Lownes,* 499 N.W.2d 896 (S.D.1993). "Specific articulation of the *Boykin* rights by the trial judge is not an indispensable requisite for the record to establish a valid plea." As the Honorable· Judge Wollman noted, when sitting for this Court almost two decades ago, "[t]he fact that we require an *on the record inquiry* when a guilty plea is accepted does not, ... also require us to automatically wipe out the plea if no such inquiry is made." *Merrill v. State,* 87 S.D. 285, 206 N.W.2d 828, 830 (1973); *Commonwealth v. Godfrey,* 434 Pa. 532, 254 A.2d 923 (1969); *Cf. State v. Garritsen* 421 N.W.2d 499, 502, n. 3, (S.D.1988). "It is sufficient when the record *in some manner* shows the defendant entered his plea understandingly and voluntarily." *Quist v. Leapley,* 486 N.W.2d 265, 267 (S.D.1992); *Logan v. Solem,* 406 N.W.2d 714, 717 (S.D.1987) (emphasis in original). The record need only show that he knew of his rights and the consequences of

his guilty plea. *Id.* "There is no requirement that the record show an express enumeration by the court nor an express waiver by the defendant ... as a condition precedent to a voluntary and intelligent guilty plea" *Id.* The "standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative causes of action open to the defendant." *Id.* Accord *State v. King, supra,* 400 N.W.2d at 879. Basic, conclusionary records of the defendant's prior convictions specifying that he made a knowing and voluntary waiver of his "constitutional rights" before pleading, are sufficient to establish that the prior convictions were constitutionally sound. *U.S. v. Taylor,* 882 F.2d 1018, 1031 (6th Cir.1989).

 To initiate a challenge to a predicate conviction, the defendant must produce credible evidence to establish a basis to declare his conviction was constitutionally defective. A bald assertion that he does not remember receiving his rights is patently insufficient. *Wabasha v. State,* 292 N.W.2d 340 (S.D.1980). Likewise, when no transcripts exist, for whatever reason, absent misconduct by the state, the court will be presumed to have discharged its duty. *U.S. v. Dickerson,* 901 F.2d 579, 583 (7th Cir. 1990). In order to impose upon the state the burden of establishing the validity of guilty plea, the defendant must first offer evidence of non-compliance with *Boykin. Dunn v. Simmons, supra,* (Circuit Judge Ryan, concurring in part; dissenting in part). As we recently stated in *State v. Lownes, supra,* where the defendant has failed to produce evidence that prior convictions were constitutionally infirm, the convictions may properly be used for enhancement purposes.[4]

 Once the defendant has set forth an evidentiary basis which casts the predicate conviction in doubt, we would encourage the parties to produce relevant evidence to assist

4. We very much appreciate Justice Amundson's emphasizing this process as originally discussed in *State v. Randen,* 497 N.W.2d 107 (S.D.1993) and *Stuck.* No exception whatsoever is taken to his observation that the "presumption of regularity" is recognized as a means by which the state meets its burden of constitutional validity. It is not the intent of this decision to sweep aside

South Dakota precedent, but to merely point out the emerging authorities in this area; in particular the distinction between direct appeals and collateral attacks where one seeks to buffer the effect of past criminal conduct when juxtaposed with present criminality, which is implicitly recognized in the South Dakota cases as most recently set forth in *Lownes.*

the fact finder in this inquiry. Among the methods of proof that would be useful are, of course, the verbatim record and the original court file. We recognize that these may not be available when the defendant seeks to exhume elusive claims of unconstitutionality from relatively ancient convictions. Consequently, it is also appropriate to utilize testimony from those who specifically recall the particular plea taking procedure of the judge or those who have appeared in the court regularly to establish what the court's normal and ordinary procedure was in explaining of rights to a defendant. *U.S. v. Dickerson,* 901 F.2d 579 (7th Cir.1990); *U.S. v. Goodheim,* 686 F.2d 776 (9th Cir.1982); *U.S. v. Gallman,* 907 F.2d 639 (7th Cir.1990); *U.S. v. Dickens,* 879 F.2d 410 (8th Cir.1989).

 It is up to the court to determine whether the defendant has met his burden of producing credible evidence that there was a constitutional infirmity in his guilty plea, and then whether the state has met its resulting burden in establishing that the specific constitutional defect of which evidence has been presented, by the defendant, did not occur at the time of the predicate conviction.

Only claimed constitutional defects and/or those that manifestly, on their face, establish a miscarriage of justice should be given countenance, for review purposes, by the court.

## II.

THERE WAS NO BASIS FOR CHALLENGING THE ASSERTED LACK OF FACTUAL BASIS FOR MOELLER'S GUILTY PLEAS IN CRIMINAL NOS. 76–54 AND 76–55 WHICH WERE USED TO ENHANCE HIS SENTENCE.

 Rule 11 of the Federal Rules of Criminal Procedure (factual basis for a plea) was adopted in substance by this Court in *State v. Doherty,* 261 N.W.2d 677 (S.D.1978), and *Spirit Track v. State,* 272 N.W.2d 803 (S.D.1978) before SDCL 23A–7–2 and 23A–7–14 were enacted. *State v. Sutton,* 317 N.W.2d 414 (S.D.1982). However, failure to comply with the statutory provisions of SDCL 23A–7 does not rise to the level of a constitutional issue, nor is it proper for consideration on habeas appeal, or similar collat-

eral attacks. *Logan v. Solem,* 406 N.W.2d 714 (S.D.1987). Failure to inquire into the factual basis for a plea would not render a plea involuntary or violate the "knowingly made" requirement so as to subject the guilty plea to collateral attack. *Petrilli v. Leapley,* 491 N.W.2d 79, 83 (S.D.1992). Such a violation is neither constitutional nor jurisdictional. *Id.* at 83, n. 2. The lack of a factual basis inquiry does not rise to the level of a miscarriage of justice allowing a collateral attack on the validity of the conviction "to do service for an appeal." *State v. Jacobson,* 491 N.W.2d 455, 460 (S.D.1992); *Petrilli, supra,* 491 N.W.2d at 83, n. 2. *See also Gross v. Solem,* 446 N.W.2d 49 (S.D.1989); *State v. Lownes, supra; U.S. v. Newman,* 912 F.2d 1119 (9th Cir.1990).

## III.

ALLEGED FAILURE TO ADVISE OF MAXIMUM PENALTIES CREATES NO IMPEDIMENT TO CONSIDERATION OF PREDICATED CONVICTIONS.

 The record below indicates that Moeller was properly advised pursuant to SDCL 23–35–19, which governed the entry of a plea of guilty under South Dakota law in 1976, which did not require admonition of penalties as later amended. Moeller has improperly relied upon the statutory requirements of SDCL 23A–7–4 below, and in this appeal, to challenge the constitutional validity of his conviction for grand larceny and burglary. This statute was not in effect in 1976. The "revised rules of criminal procedure cannot be used to attack a conviction otherwise valid under prior rules." *U.S. v. Bradley,* 922 F.2d 1290, 1297 (6th Cir.1991), *citing U.S. v. Davenport,* 884 F.2d 121, 123 (4th Cir.1989). Statutory discussion aside, we have previously held that the failure to advise a defendant of the maximum sentence is not a constitutional defect, and in and of itself does not smack of a miscarriage of justice. Moreover, it generally does not give rise to an opportunity to launch a collateral attack on a predicate conviction. *State v. King, supra; see also Everitt v. Solem,* 412 N.W.2d 119 (S.D.1987), and *Goodroad v. Solem,* 406 N.W.2d 141 (S.D.1987). Finally, Moeller's contention that "[t]here is nothing

in the record that defendant knew what the maximum penalty was" is disingenuous.

## IV.

### LACK OF 48 HOUR WAITING PERIOD NOT PROPERLY RAISED.

 Initially, we wish to point out that Moeller failed to raise this purely statutory challenge below, and has waived this issue on appeal. *State v. Rich*, 417 N.W.2d 868, 870 (S.D.1988), *King, supra*, 400 N.W.2d at 880.[5] However, we wish to take this opportunity to reiterate and clarify the law to avoid future confusion in the area. Moeller offered no credible evidence of any significant prejudice he suffered as a result of the time frames. "In the absence of testimony that this additional time would have been used to withdraw [the] plea or take some action in [the defendant's] own behalf," there is not prejudice justifying post conviction relief. *Wabasha v. State*, 292 N.W.2d at 343. Moreover, due significance should be placed upon the fact that Moeller's "guilt was determined by a plea in accord with a prearranged bargain as opposed to a jury or bench verdict." *Clark v. State*, 294 N.W.2d 916, 921 (S.D.1980). Even assuming, *arguendo*, that there was a technical violation, not every technical violation requires a reversal. *State v. Moves Camp*, 376 N.W.2d 567, 569 (S.D. 1985).

## V.

### MOELLER'S 1976 GUILTY PLEAS WERE MADE KNOWINGLY, VOLUNTARILY, AND INTELLIGENTLY BASED UPON THE "TOTALITY OF THE CIRCUMSTANCES."

 Moeller contends that the pleas were not knowingly and voluntarily given, considering the totality of the circumstances. We summarily reject this contention. We note the following: one, Moeller had completed his GED; two, Moeller received assistance of counsel; three, the minutes reflect that Moeller repeatedly indicated that he "understood"; and four, Moeller was well experienced in the criminal justice system. Al-

though the above factors are not dispositive, they certainly lend support to the validity of defendant's convictions. *See Stacey v. State*, 349 N.W.2d 439, 442 (S.D.1984).

## VI.

### THE STATE IS NOT REQUIRED TO PROVE THAT THE CONVICTIONS USED TO ENHANCE MOELLER'S SENTENCE WERE CONSTITUTIONALLY VALID, UNDER THE HIGHER BURDEN OF PROOF BEYOND REASONABLE DOUBT.

It has been held on numerous occasions that the constitutional foundations for a predicate conviction is a mixed question of law and fact. Such questions must be established by the trial court based upon a preponderance of the evidence. *Stuck, supra*, 473 N.W.2d at 476; *U.S. v. White*, 890 F.2d 1033, 1035–1036 (8th Cir.1989).

## VII.

### THE TRIAL COURT PROPERLY ALLOWED THE STATE TO AMEND THE HABITUAL OFFENDER INFORMATION.

 SDCL 22–7–11 requires that a habitual offender information "must be filed as a separate information at the time of, or before" arraignment. "The purpose of this section is to insure that a defendant is fully aware of the consequences of a conviction on the principal felony count." *State v. Gardner*, 429 N.W.2d 60, 61 (S.D.1988). The amendments in this case were done in a timely fashion prior to conviction. Moeller "does not seriously suggest that he was in any way prejudiced by the amendments. In the absence of evidence of that, [Moeller's] claim of error is without merit." *Id.* Amendments to a habitual offender information are allowed providing the defendant is not prejudiced. In this case there is not prejudice, claimed or otherwise. *State v. Layton*, 337 N.W.2d 809, 814 (S.D.1983).

---

**5.** A plea taking judge in 1976 was charged with the duty to immediately sentence the accused

pursuant to SDCL 23–35–20, prior to its repeal on July 1, 1979.

## VIII.

### STATE OF MIND OF THE VICTIM WAS NOT IMPROPERLY PRESENTED TO THE JURY.

Moeller asserts that the trial court erred in allowing the state to inquire concerning the victim's state of mind at the time of the aggravated assault. Whether the victim was in fear is irrelevant to the charge of aggravated assault. The intention of Moeller is the gravamen of the offense, not the belief of the victim. *State v. Bradley*, 431 N.W.2d 317 (S.D.1988); *State v. LaCroix*, 423 N.W.2d 169 (S.D.1988); *State v. Stapleton*, 387 N.W.2d 28 (S.D.1986). However, the victim's state of mind is important to explain the motivation for her conduct during the assault. Here she grabbed Moeller's knife, resulting in severe and permanent injury. Why she would do so deserves explanation. Interestingly, Moeller argued at trial that this was, in essence, an accidental action on her part. The other, more logical explanation was that it was a defensive move to diminish a threat to herself or her child. Historically, we have allowed one to explain motivation for conduct. Additionally, what Moeller believed concerning the fear generated in the victim is relevant to the issue of assault. It is recognized that one is entitled to testify to the observations of the apparent state of mind of another. SDCL 19–15–1. Subtle characteristics of fear may be observable but difficult to articulate. Such characteristics include sweating, flushed face, tremors, eye movement, and other subtle conduct which may give rise to the awareness of the defendant that he has succeeded in instilling fear in a victim. The fact that fear did in fact exist gives rise to the reasonable belief that Moeller was aware, through observations of the demeanor the victim, that the victim was in fact in fear as a result of his conduct. The court here was careful to cau-

tion the jury that the state of mind of the victim was itself not relevant, but only the belief of Moeller. Under the circumstances it was legitimate for the state to inquire concerning the state of mind of the victim both to establish motivation for conduct by the victim as well as to provide an indication of the possibility that Moeller may have perceived this emotion. We would also note that the prosecutor made no effort to utilize the emotional impact of this testimony and consistently advised the jury that the element of Moeller's intention was the issue, not the subjective belief of the victim.

Affirmed.

WUEST, J., concurs.

MILLER, C.J., concurs specially in part and concurs in result in part.

HENDERSON and AMUNDSON, JJ., concur in result.

TICE, Circuit Judge, for SABERS, J., disqualified.

MILLER, Chief Justice (concurring specially in part, concurring in result in part).

I write specially to agree with the adoption of the United States Supreme Court's determination that a state court may presume, "at least initially, that a final judgment of conviction offered for purposes of sentence enhancement was validly obtained." *Parke v. Raley*, 506 U.S. ——, ——, 113 S.Ct. 517, 524, 121 L.Ed.2d 391, 404 (1992).

We noted in *State v. Randen*, 497 N.W.2d 107, 109 n. 2 (S.D.1993), the "lack of any apparent conflict between *Parke* and the burdens of proof we outlined in *Stuck*." * See also *State v. Lownes*, 499 N.W.2d 896, 902 (S.D.1993) (stating in dicta that a silent record would not create a presumption the prior conviction was unconstitutional). Moreover, this court has previously referred to the pre-

---

* In *Randen*, we declined to adopt *Parke's* presumption of validity from a silent record as to *Boykin* rights. *Randen*, 497 N.W.2d at 109. I agreed because *Randen* dealt with uncounseled pleas which were silent as to *Boykin* rights and in which the state made no showing that the defendant had knowingly waived counsel. *Id.; see Burgett v. Texas*, 389 U.S. 109, 114–15, 88 S.Ct. 258, 262, 19 L.Ed.2d 319, 324 (1967) ("presum-

ing waiver of counsel from a silent record is impermissible") (citing *Carnley v. Cochran*, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962)); *accord State v. Cashman*, 491 N.W.2d 462, 463 (S.D.1992) (holding prior uncounseled convictions may be used for sentence enhancement purposes only where defendant validly waives counsel) *cert. denied*, —— U.S. ——, 113 S.Ct. 1401, 122 L.Ed.2d 774 (1993).

sumption of regularity that attaches to a final judgment. *Alexander v. Solem,* 383 N.W.2d 486, 488 (S.D.1986).

The burden-shifting procedure formulated by this court in *Stuck v. Leapley,* 473 N.W.2d 476, 478–79 (S.D.1991) is consistent with *Parke's* presumption of validity attaching to a final judgment. In *Stuck* the defendant challenged the state's use of prior convictions to enhance his sentence, claiming the prior convictions were infirm as they failed to establish he had been advised as to his *Boykin* rights and relying heavily upon *Dunn,* which struck down Kentucky's burden shifting scheme as unconstitutional. *Stuck,* 473 N.W.2d at 477 (distinguishing *Dunn v. Simmons,* 877 F.2d 1275 (6th Cir.1989) *abrogated by Parke,* 506 U.S. ——, 113 S.Ct. 517, 121 L.Ed.2d 391). In *Stuck* we determined the records of the prior convictions did establish Stuck "knowingly and voluntarily entered his prior pleas." *Stuck,* 473 N.W.2d at 479. Adoption of *Parke* simply adds that where the record of a prior conviction is silent, there is a presumption that the conviction is valid, absent credible evidence presented by the defendant that the conviction was obtained in violation of a constitutional right. Therefore, I do not view adoption of *Parke* as a departure from precedent in this court.

I join Justice Amundson's concurrence in result concerning the evidence brought in to show the victim's state of mind was relevant in a charge of aggravated assault.

HENDERSON, Justice (concurring in result).

State's brief contains 61 federal citations throughout the United States and five references to the United States Code. Furthermore, there are two references to the Federal Rules of Criminal Procedure and three references to the Sentencing Guidelines. (Said sentencing guidelines never having been adopted by the State of South Dakota.) In a supplemental brief submitted by the State of South Dakota, an additional United States Supreme Court case is cited, namely *Parke v. Raley,* 506 U.S. ——, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992). In addition, State cited to 42 South Dakota Supreme Court decisions.

In digesting the Appellant's brief, I note that it refers to six federal decisions and 17 decisions of the Supreme Court of South Dakota. Appellant's Reply Brief contains two new authorities by way of decisions in this Court.

There are approximately 50 cases cited in the majority opinion, many of which are federal decisions, all impacting and, perhaps, in one way or the other, modifying the decisional law of this state. It appears to me that South Dakota Supreme Court decisions are swept aside in deference to federal decisions. I cannot, and will not, fully vote for this majority opinion which aids in unsettling the law of this state. It appears to me that the line of relevant South Dakota decisions have been cast aside by the heavy hand of quoted federal authorities. Therefore, the unforeseeable damage, caused by this type of writing, is unknown. Only the future will unfold the implications of the majority writing. We simply cannot examine the length nor the breadth of this impactual writing today. With the heavy citations of federal law, it is difficult, as an appellate writer, to make a valued judgment in interpreting the principles of law or stare decisis or legal precept selected by the writer. It strikes me (in any given jurisdiction) that a metamorphosis of the law is shaped, down through the years, by a mold of scholasticism. Thereby, the law takes on a degree of permanent shape in its evolution.

Having been a part of the growth of decisional law in this state for a period of a decade and one-half, I am not willing to surrender the writings of the gentlemen I have served on this Court with, such as former Chief Justices Roger Wollman, Francis Dunn, Jon Fosheim, and Robert Miller, not to mention Justices Morgan, Sabers, Amundson and Acting Justice E.W. Hertz. This likewise applies to former Chief Justice George Wuest, who joined the majority opinion.

Need I mention that the appellate review process is a troubled quest for rational outcome? Through countless hours of academic research, and thousands of decisions in this Court, we arrive at settled South Dakota law.

Here, the merit of the case—to affirm—escapes me not—but the magnitude of this writing, with competing federal and South Dakota authorities hobbles me—for I cannot walk safely in the durability of the law.

Therefore, I can only concur in the result and do not subscribe to the technique in arriving at an affirmance.

AMUNDSON, Justice (concurring in result).

In *State v. Randen*, 497 N.W.2d 107, 109 (S.D.1993), this court held that a prior conviction carries a presumption of regularity. We also discussed the procedures to be followed in enhancement proceedings:

> Recently, in *Stuck v. Leapley*, 473 N.W.2d 476, 478–79 (S.D.1991), we carefully outlined the various burdens of proof in habitual offender proceedings.
>
> [W]here the defendant places the constitutional validity of the prior convictions in issue by a motion to strike or other appropriate means, the state has an initial burden of proving the existence of prior *valid* convictions by a preponderance of the evidence....
>
> [W]hen state meets its initial burden of proof, the burden shifts to the defendant to show that the prior convictions are invalid. This appears to require a plea transcript indicating that the prior plea was not valid, or testimony to that effect by a participant in the plea proceeding (i.e., defendant, defendant's attorney, the prosecutor, the judge, etc.). (emphasis in original) (footnote and citations omitted).
>
> In *Stuck*, we held that state met its initial burden of proving the constitutional validity of prior convictions challenged by a habeas corpus petitioner by submitting records of the convictions showing that, at the time the petitioner entered his guilty pleas, he was fully advised of his constitutional rights *and* was represented by counsel. Because the petitioner failed to offer plea transcripts indicating that the prior pleas were not valid and failed to offer any

other evidence or testimony to that effect, we held that he failed to meet his burden of showing some invalidity in the prior convictions and upheld his habitual offender conviction.

*Id.* (emphasis in original). Further, the court held in Footnote 2, when discussing *Parke v. Raley*, 506 U.S. ——, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992), there was no reason to deviate from the precedent established in *Stuck, supra*, at that time. I continue to agree that there is no need to depart even at this time.* By adhering to our prior precedent, the decision of the trial court in this case should be affirmed.

The parties and the trial court agreed that the victim's state of mind was not an element which the State was required to prove in its case against Moeller. Notwithstanding this agreement, the trial court held that the victim's state of mind was relevant to determine what Moeller was attempting to do at the time of the incident. Was the victim's state of mind relevant to prove any fact at issue in this prosecution? On the record, obviously not. *State v. Brings Plenty*, 459 N.W.2d 390 (S.D.1990). The established precedent of this state clearly shows that the victim's state of mind is not relevant in prosecuting an aggravated assault case. *State v. Stapleton*, 387 N.W.2d 28 (S.D.1986). I would not set a precedent by allowing the victim's state of mind to creep into settled law as an appropriate element of aggravated assault. The majority opinion seems to make the victim's state of mind an additional element of aggravated assault.

The next question is to consider the probability of this evidence having an impact on the jury verdict. *State v. Mitchell*, 491 N.W.2d 438 (S.D.1992). Considering Moeller's conduct during the incident, I do not find admission of this evidence prejudicial error mandating a reversal of the jury verdict.

---

* In *Parke*, the United States Supreme Court ruled on the constitutional validity of Kentucky's statutory procedure for determining the validity of a prior conviction. Our state legislature has not adopted any statutory procedure for such a determination. South Dakota's procedure has been established by precedent in our prior opinions.