STATE of South Dakota, Plaintiff
and Appellant.

v.

Michael James CASHMAN, Defendant
and Appellee.

No. 17684.

Supreme Court of South Dakota.

Considered on Briefs April 23, 1992.

Decided Oct. 21, 1992.

Mark Barnett, Atty. Gen., Jeffrey P. Hallem, Asst. Atty. Gen., Pierre, for plaintiff and appellant.

Douglas G. Fosheim of Fosheim and Haberstick, Huron, for defendant and appellee.

SABERS, Justice.

State appeals an order dismissing a Part II Information charging Michael Cashman (Cashman) with third offense driving under the influence of alcohol (DUI). We reverse and remand.

## FACTS

On June 6, 1991, state filed an information charging Cashman with one count of DUI and one count of driving with a revoked license. State also filed a Part II Information for third offense DUI alleging Cashman had two prior DUI convictions. Cashman pled guilty to the principal DUI and not guilty to the Part II Information.[1]

A court trial on the Part II Information took place on July 17, 1991. Cashman admitted he was the same person as was previously convicted of DUI on the two dates alleged in the Information. However, he moved to dismiss the Information on the basis that the records of his two prior convictions failed to reflect a knowing and intelligent waiver of his right to counsel prior to entry of the uncounseled guilty pleas on which the convictions were based. Cashman contended his waiver of counsel in the prior cases could not have been knowing and intelligent because the records failed to show that the plea taking courts informed him of the dangers and disadvantages of self-representation as required by *State v. Van Sickle*, 411 N.W.2d 665 (S.D.1987). The trial court took judicial notice of the records of the prior convictions but reserved ruling on Cashman's motion to dismiss.

On September 18, 1991, the trial court entered findings of fact, conclusions of law and an order. The trial court found that the records of Cashman's prior convictions did fail to reflect that either plea taking court informed him of the dangers and disadvantages of self-representation. As a result, the court concluded Cashman's guilty pleas could not be found to have been voluntary, knowing and intelligent and that the prior convictions could not be

---

1. The record fails to reflect any plea to, or disposition of, the driving with a revoked license charge.

used to enhance his sentence for his third DUI. The trial court entered its order dismissing the Part II Information and state subsequently filed a petition for allowance of this intermediate appeal of the order of dismissal.

### ISSUE

WHETHER THE TRIAL COURT ERRED IN HOLDING CASHMAN'S PRIOR CONVICTIONS COULD NOT BE USED FOR ENHANCEMENT PURPOSES BECAUSE THE RECORDS OF THE CONVICTIONS FAILED TO REFLECT AN ADVISEMENT OF THE DANGERS AND DISADVANTAGES OF SELF–REPRESENTATION?

State concedes that a criminal conviction may not be used to enhance punishment for a subsequent criminal offense without counsel having been present *or a valid waiver of counsel having been obtained* in the prior proceedings. *Burgett v. State of Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967). In *Van Sickle, supra,* we recognized the constraints on a valid waiver of the right to counsel set forth by the U.S. Supreme Court in *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), and held that:

> A defendant must be aware of the dangers and disadvantages of self-representation. On appeal, waiver of the right to counsel will not be found knowingly and intelligently made unless the trial court (1) warns the defendant of the dangers of self-representation or, (2) unless the record indicates circumstances from which this court can find the defendant was aware of the danger and made a knowing and intelligent waiver. While in some cases there may be a record showing a defendant is aware of the pitfalls of self-representation, an admonition from the trial court is preferred as it eliminates any doubt.

*Van Sickle,* 411 N.W.2d at 667.

Here, state does not contest the trial court's finding that the records of Cashman's prior convictions fail to reflect an advisement on the dangers of self-representation. Rather, state contests the trial court's conclusion that such an advisement was required for Cashman to validly waive his right to counsel in the prior cases. State argues a full *Faretta* or *Van Sickle* advisement on the dangers of self-representation is not required for a valid waiver of the right to counsel when a defendant enters a plea of guilty to a criminal charge. We agree.

State relies on the recent decision of the Eleventh Circuit Court of Appeals in *Stano v. Dugger,* 921 F.2d 1125 (11th Cir.1991). Stano was charged with the commission of two murders. He initially entered not guilty pleas to the charges but later decided to change his pleas to guilty. During a change of plea hearing, Stano's appointed counsel advised the court that, although he did not feel prepared to advise Stano on the advisability of a trial, Stano did not want a trial and wanted to plead guilty to the charges. The trial court explained to Stano in detail the results of his pleading guilty and ascertained that Stano had discussed those consequences with his counsel. The trial court also advised Stano that pleading guilty waived his defenses and rights to a jury trial with representation by counsel. The trial court elicited from Stano that his pleas were voluntary and emphasized that pleading guilty did not commit the court to a particular sentence. Stano then entered his pleas which the trial court accepted.

During subsequent post-conviction proceedings to obtain relief from his convictions, Stano, like Cashman, argued that he was representing himself when he entered his guilty pleas and, therefore, the trial court should have engaged in a *"Faretta* inquiry" on the dangers of self-representation. Stano's argument was rejected on several foundations and, ultimately, the circuit court reached the following pertinent conclusions:

> Because the right to counsel is so precious to our jurisprudence, the waiver of this right must be asserted. *The trial court's inquiry into a knowing, intelligent and voluntary decision to proceed pro se under Faretta is tailored to elicit whether the defendant is capable of conducting his own defense.* In this

circuit, the defendant is questioned specifically regarding his knowledge of the rules of procedure, evidence and courtroom decorum.

*By definition, a defendant who pleads guilty relinquishes his defense. He, therefore, does not need to be examined as to his understanding of courtroom procedure.* While the due process knowing, intelligent and voluntary plea taking questions are subsumed in a *Faretta* examination, a more extensive colloquy must transpire in order for the trial court to satisfy itself that the defendant is aware of the dangers of conducting his own defense. Under Supreme Court and binding circuit precedent, the *Faretta* inquiry is reserved for advising a defendant of the disadvantages of proceeding pro se *at trial* ...

*Stano*, 921 F.2d at 1148–49 (footnotes omitted) (emphasis added).

*Stano*'s narrow application of the *Faretta* inquiry to defendants exercising their right to proceed pro se at *trial* is consistent with *Faretta*. *Faretta* involved a defendant who was required to accept the assistance of counsel *at trial* irrespective of a pretrial request that he be permitted to represent himself. *Stano* is also consistent with this court's recognition of *Faretta* in *Van Sickle*. *Van Sickle* also involved a defendant who represented himself during the course of a criminal *trial.*

Cashman's position that there can be no valid waiver of the right to counsel at any stage of the criminal process absent a *Faretta* inquiry, is not only contrary to the context in which *Faretta* and *Van Sickle* were decided but also fails to make common sense. Such a holding would require advice to any defendant waiving counsel, *at any stage in the criminal process*, of dangers of self-representation such as adherence to technical rules on the conduct of trial, the advantages of representation by experienced counsel, the advantages self-representation may afford the prosecution, diminishment of the effectiveness of his defense, etc. *See, Van Sickle*, 411 N.W.2d at 666–67. While this advice might be of use to a defendant considering proceeding pro se *at trial*, it might only serve to confuse a defendant making a decision to waive counsel in the earlier stages of the criminal process where such warnings are inapplicable.

The U.S. Supreme Court has itself found the extensive advisement on the dangers of self-representation required by *Faretta* unnecessary for a valid waiver of the right to counsel in the early stages of criminal proceedings. In *Patterson v. Illinois*, 487 U.S. 285, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988), the Court considered a defendant's contention that his Sixth Amendment right to counsel was violated because he did not knowingly and intelligently waive his right to have counsel present *during post indictment questioning*. The Court reasoned:

> At one end of the spectrum, we have concluded there is no Sixth Amendment right to counsel whatsoever at a postindictment photographic display identification, because this procedure is not one at which the accused "require[s] aid in coping with legal problems or assistance in meeting his adversary." At the other extreme, recognizing the enormous importance and role that an attorney plays at a criminal trial, we have imposed the most rigorous restrictions on the information that must be conveyed to a defendant, and the procedures that must be observed, before permitting him to waive his right to counsel *at trial. See [Faretta, supra]*. In these extreme cases, and in others that fall between these two poles, we have defined the scope of the right to counsel by a pragmatic assessment of the usefulness of counsel to the accused at the particular proceeding, and the dangers to the accused of proceeding without counsel. An accused's waiver of his right to counsel is "knowing" when he is made aware of these basic facts. Applying this approach, it is our view that whatever warnings suffice for *Miranda's* purposes will also be sufficient in the context of postindictment questioning. The State's decision to take an additional step and commence formal adversarial proceedings against the accused does not substantially increase the value of counsel to the accused at questioning,

or expand the limited purpose that an attorney serves when the accused is questioned by authorities. With respect to this inquiry, we do not discern a substantial difference between the usefulness of a lawyer to a suspect during custodial interrogation, and his value to an accused at post-indictment questioning.

Thus, *we require a more searching or formal inquiry before permitting an accused to waive his right to counsel at trial than we require for a Sixth Amendment waiver during post-indictment questioning—not* because post-indictment questioning is "less important" than a trial (the analysis that petitioner's "hierarchical" approach would suggest)—*but because the full "dangers and disadvantages of self-representation," Faretta, supra, 422 U.S. at 835, 95 S.Ct., at 2541, during questioning are less substantial and more obvious to an accused than they are at trial.* Because the role of counsel at questioning is relatively simple and limited, we see no problem in having a waiver procedure at that stage which is likewise simple and limited. So long as the accused is made aware of the "dangers and disadvantages of self-representation" during postindictment questioning, by use of the *Miranda* warnings, his waiver of his Sixth Amendment right to counsel at such questioning is "knowing and intelligent."

*Patterson*, 487 U.S. at 298–300, 108 S.Ct. at 2398–99, 101 L.Ed.2d at 276–77 (citations and footnotes omitted) (emphasis added).

The full dangers and disadvantages of self-representation in the entry of a guilty plea might not be as insubstantial as those involved in the post-indictment questioning at issue in *Patterson*. However, they are even more obvious to an accused fully advised of the charges, the elements of the offenses, his constitutional and statutory rights, the maximum possible penalties, and the fact that a plea of guilty would waive these rights.

In *Patterson*, the Supreme Court described the "key inquiry" in determining whether there has been a valid waiver of the Sixth Amendment right to counsel as: 1) whether the accused was made sufficiently aware of his right to have counsel present; and, 2) whether the accused was made sufficiently aware of the possible consequences of a decision to forego the aid of counsel[2]. *Patterson*, 487 U.S. at 292–93, 108 S.Ct. at 2395, 101 L.Ed.2d at 272. *Patterson* held the *Miranda* warnings made the defendant aware of his right to have counsel present during questioning and also made him aware of the consequences of waiving his right to counsel by advising him that any statement could be used against him, "the ultimate adverse consequence [defendant] could have suffered by virtue of his choice to make uncounseled admissions to the authorities." *Patterson*, 487 U.S. at 293–94, 108 S.Ct. at 2395, 101 L.Ed.2d at 273. Additionally, the Supreme Court noted the defendant was aware of the consequences of waiving counsel because, "[the *Miranda*] warning ... let [defendant] know what a lawyer could 'do for him' during the postindictment questioning: namely, advise [defendant] to refrain from making any such statements." *Id.*

Similar facts are present in the prior guilty plea proceedings in this case. During the course of both proceedings, Cashman was advised of his right to counsel and to court appointed counsel if he was indigent. In both proceedings, Cashman indicated his understanding of his right to counsel. Thus, it is beyond dispute that Cashman was aware of his right to counsel. Also as in *Patterson*, it is obvious that Cashman had to know "what a lawyer

---

**2.** This second prong of the inquiry is not conceptually distinguishable from *Faretta*. Where a defendant decides to waive counsel and proceed pro se *at trial,* a *Faretta* inquiry on the dangers and disadvantages of self-representation *at trial* is obviously necessary to make the defendant aware of the consequences of a deci- sion to forego the aid of counsel *at trial.* Thus, *Patterson* does not so much define *Faretta* in determining the validity of a waiver of the right to counsel as *Faretta* can be viewed as defining *Patterson* in determining the validity of a waiver of the right to counsel in *trial* proceedings.

could 'do for him' ..." (*Id.*) during the entry of his plea, namely: advise him to plead not guilty. Clearly, by having been advised of the maximum possible penalties for his offenses, Cashman was aware of the "ultimate adverse consequence ..." (*Id.*) he could suffer by entering an uncounseled guilty plea.

Based upon the above analysis, we conclude that, under *Patterson,* all requirements were met for a valid waiver of Cashman's right to counsel prior to entry of the uncounseled guilty pleas on which his prior convictions were based. Since there was a valid waiver of counsel in obtaining those convictions, their use for enhancement purposes would not violate the *Burgett* admonishment against use of prior convictions where a valid waiver of counsel was not obtained. Accordingly, we hold that the trial court erred in its dismissal of the Part II Information filed against Cashman for third offense DUI.

We reverse and remand for further proceedings.

MILLER, C.J., and AMUNDSON, J., concur.

HENDERSON, J., specially concurs.

WUEST, J., disqualified.

HENDERSON, Justice (specially concurring).

There is a defect in the proceedings below which should be called to the attention of the trial judge herein.

After Appellee had entered his uncounseled guilty plea in the 1989 Beadle County arraignment and after the court accepted said plea as being "voluntary, intelligent and knowing supported by facts," I note the fourth colloquy, between the trial court and Cashman, *with respect to the disposition of an Information alleging a prior DWI conviction* (enhancement aspect of the *second conviction* ):

THE COURT: It's also been filed with the Court the *second part of the information* Mr. Cashman would indicate this would be a second offense driving and controlling a vehicle with alcohol in the blood. Have you received a copy of that? (Emphasis supplied mine).

MR. CASHMAN: Yes.

THE COURT: Do you need a minute to look at that or _____? * Do you have any questions on this part of the information?

MR. CASHMAN: No.

THE COURT: You also have the right to have this part of the information read into the record or that again could be waived if you feel that's unnecessary. Do you understand this read?

MR. CASHMAN: No, Sir.

THE COURT: The formal reading of this part of the information would then be waived. Are you prepared at this time to enter a plea to this part of the information?

MR. CASHMAN: Yes.

THE COURT: To the information charging that this would be a second offense driving and controlling a vehicle with alcohol in the blood. What do you plead, guilty or not guilty?

MR. CASHMAN: Guilty.

Trial court then asked Cashman if he was the same Michael James Cashman as the Michael James Cashman who was convicted in 1988 of DWI in Sanborn County. Cashman answered yes, he was, whereupon the trial court took notice of the certified copies of the Sanborn County pleadings. Trial court then pronounced sentence. Regarding the separate information, there is nothing in the record to show that Cashman was advised of his right to a jury trial to the separate information alleging a prior conviction. *See,* SDCL 32–23–4.4 and *State v. Bartlett,* 411 N.W.2d 411 (S.D.1987). There is nothing in the record to establish Cashman was advised of those rights specified in SDCL 23A–7–4, i.e., the (1) right to an attorney or (2) court-appointed attorney or (3) the right to confront and (4) cross-examine or (5) the right to remain silent or (6) the consequences of an admission.

Cashman's knowledge, when confronted with the separate information alleging a prior DWI conviction, was restricted to the

---

* Unavailable to this writer because record does not reflect what should be in the blank.

singular right to have the second information read to him. Nothing more. How could Cashman assert *any* rights when he was not advised of them? Obviously, he could not. This all pertains to the *enhancement* on the second conviction. This does not mean that the second conviction is invalid. It does mean that the *enhancement on the second provision is faulty.* It does not mean that the first conviction is invalid or that the third conviction in 1991, the case before us, is invalid. This defect does not vitiate the existence of three valid convictions. Three valid convictions attend unto Cashman.

So why write this special concurrence? Elementary, my dear Watson. First, counsel for appellee Cashman briefed this point, heavily relying on it. Second, a trial judge, on an enhancement proceeding, should arraign a defendant with the admonitions set forth above. To not do so, is to "set up" a criminal defendant for punishment (enhanced punishment) without benefit of telling him that he has several rights, to include being represented by an attorney and having a jury trial. Third, an appellate body exists to present a structural or procedural measure to mitigate or avoid future adverse effects when advising defendants in sentencing enhancement, via a Part II or Second Information. Thereby, costly appeals can be averted.