#25776-rev & rem-DG

**2011 S.D. 59**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

   v.

MILO WALTER HIRNING,                       Defendant and Appellant.


* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
BROWN COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE TONY L. PORTRA
Judge

* * * *

MARTY J. JACKLEY
Attorney General

MAX A. GORS
Assistant Attorney General
Pierre, South Dakota                      Attorneys for plaintiff
                                         and appellee.


STEVE MILLER
Sioux Falls, South Dakota                 Attorney for defendant
                                         and appellant.

* * * *

CONSIDERED ON BRIEFS
ON AUGUST 23, 2011

OPINION FILED **09/21/11**

GILBERTSON, Chief Justice

[¶1.] Milo Hirning pleaded guilty to unauthorized possession of a controlled substance and admitted to being a habitual offender. On appeal, he argues his waiver of counsel was not voluntary, knowing, and intelligent. We reverse and remand.

## FACTS

[¶2.] In January 2010, Hirning was on parole, living in his home in Aberdeen, South Dakota. Police were looking for an absconder, Jesse Madsen, and located Jesse's father's vehicle in Hirning's driveway. Believing Jesse was also in Hirning's house, police and a parole agent entered Hirning's home. They found Hirning, Jesse, Jesse's father John, and a woman. A search of Hirning uncovered marijuana, marijuana paraphernalia, and $2,110.00 in cash. Methamphetamine was found in the house. Hirning and the other occupants tested positive for ingestion of methamphetamine and marijuana.

[¶3.] Hirning was charged with keeping a place for use or sale of controlled substances (SDCL 22-42-10), conspiracy to distribute a controlled drug or substance with high potential for abuse (SDCL 22-42-2 & 22-3-8), possession of two ounces or less of marijuana (SDCL 22-42-6), and use or possession of drug paraphernalia (SDCL 22-42A-3). He retained Aberdeen attorney Chris Jung to represent him. On March 16, 2010, the State filed a Part II Information alleging that Hirning was a habitual offender as defined by SDCL 22-7-7 to -8.1. That same day, Hirning pleaded not guilty to all charges. The habitual offender information was held in abeyance. The State filed a second superseding indictment on March 19, 2010,

adding a charge of unauthorized possession of a controlled substance (SDCL 22-42-5). A jury trial was set for June 22-23, 2010, but later continued until August 17, 2010, at Hirning's request.

[¶4.] Hirning sent a five-page letter to the court on June 9, 2010, detailing concerns regarding his attorney, past experience with the prosecutor, and having the time and resources to prepare for trial. Jung filed a motion to withdraw on June 10, 2010. The motion stated that Jung and Hirning disagreed "as to the proper course of action in this matter and [Hirning had] failed to keep in contact."

[¶5.] A hearing was held on July 2, 2010. At the hearing, the court questioned Hirning on whether he had another attorney in place if Jung was allowed to withdraw. Hirning indicated he did not, but that he was looking. The court denied Jung's motion to withdraw at that time.

[¶6.] On July 12, 2010, Jung filed a motion for a mental examination to determine if Hirning was competent to stand trial. On July 16, 2010, Hirning sent the court a letter requesting an answer to a 15-page "Bill of Particulars." At a hearing on July 22, 2010, the court stated Hirning appeared to understand the proceedings and had sent the court letters demonstrating such. The court also stated that it thought the request might be a delay tactic on Hirning's part so that he could find another attorney. Because the court could find no reasonable cause, the motion was denied.

[¶7.] Jung renewed his motion to withdraw on August 9, 2010, stating that "material disagreements as to the proper course of action in the case have occurred, which have led to a breakdown in relations between client and attorney." Hirning

sent another letter to the court dated August 4, 2010, indicating he had terminated

Jung's services.  He explained that Jung had not given him some paperwork he

requested, refused to file his request for a bill of particulars, and he therefore had

no trust or confidence in Jung's representation.  Hirning also told the court that he

had been attempting to find another attorney but had not been successful.

[¶8.]          At a hearing on August 11, 2010, the court questioned Hirning about

why he dismissed Jung.

> THE COURT: So what is your plan then if I allow Mr. Jung to
> withdraw at your request and at his request.  We're set for trial
> on Tuesday.  Are you going to represent yourself?
>
> THE DEFENDANT: I guess so, Your Honor, yes.
>
> THE COURT: Have you tried to secure other counsel?
>
> THE DEFENDANT: I have, Your Honor, I've sent out several
> letters, some have been negative.  I had one positive but at the
> time I didn't have $10,000 on hand.  But I still have several
> letters out, all my mail is sent to Springfield so if any answers
> come in they'll be down there.
>
> THE COURT: Are you asking for court appointed counsel?
>
> THE DEFENDANT: I hadn't really thought about it just yet,
> Your Honor, because I was hoping to get some answers to my
> letters.

After more discussion of Hirning's efforts to find alternative counsel, the court

asked Hirning, "if I allow [Jung] to be dismissed in this case, withdraw, then you're

going to represent yourself on Tuesday?"  Hirning responded, "I guess I will have

to."  There was further discussion about whether Hirning would qualify for court-

appointed counsel.  The court again asked Hirning whether he was going to

represent himself. Hirning had a discussion with Jung off the record and then responded, "I guess I'll have to proceed by myself then."

[¶9.] The court granted Jung's motion to withdraw. Then the court denied Hirning's demand for a bill of particulars. The court found that the form of the bill and the request were not proper, and that the information requested was not relevant to the case. The court did not revisit the issue of representation in light of its ruling on the bill of particulars request.

[¶10.] Another hearing was held two days later on August 13, 2010. At that hearing, the court questioned whether there had been any plea negotiations. Hirning talked about being in contact with an attorney, Vic Fishbach, to represent him during plea negotiations. After some discussion on the State's plea offer, the following conversation ensued:

> THE COURT: So, Mr. Hirning, do you wish to agree to that plea offer or not?
>
> THE DEFNEDANT: Would it be possible to maybe get Mr. Fishbach to help negotiate a plea bargain?
>
> THE COURT: The problem is that Mr. Fishbach has not indicated to me . . . that he's going to represent you . . . .
>
> . . .
>
> THE DEFENDANT: I was wondering, Your Honor, if I could contact him again?
>
> THE COURT: The other issue at this point is it didn't sound to me like the State is willing to make any other offer than the one that's been made, so I'm not sure how Mr. Fishbach is going to effect that.
>
> THE DEFENDANT: Well, Mr. Fishbach said it might be a good idea to have an attorney during plea negotiations.

> THE COURT: And I agree. . . . So at this point I guess . . . it appears to me we're going forward to trial.
>
> THE DEFENDANT: Well, would it be possible for me to contact Mr. Fishbach again?

[¶11.] After some more discussion, Hirning agreed to plead guilty to unauthorized possession of a controlled substance in violation of SDCL 22-42-5 and admitted to being a habitual offender in violation of SDCL 22-7-7 to -8.1.* The court advised Hirning that his sentence would be anywhere from zero to 25 years. When the court was taking the plea, it questioned, "And you have chosen to represent yourself in this matter?" Hirning responded, "Yes, Your Honor." At the end of the hearing, Hirning asked, "It would be my understanding I could have representation at the sentencing hearing then; right?" The court responded affirmatively. Hirning was represented by counsel at sentencing. He received a sentence of 25 years with seven years suspended.

[¶12.] On appeal, we address whether Hirning's waiver of counsel was voluntary, knowing, and intelligent.

## STANDARD OF REVIEW

[¶13.] "In a criminal action a defendant has both a constitutional right to be represented by counsel and a constitutional right to represent himself; it is the defendant's choice." *State v. Bruch*, 1997 S.D. 74, ¶ 14, 565 N.W.2d 789, 791. Appeals asserting an infringement of a constitutional right are reviewed de novo. *State v. Asmussen*, 2006 S.D. 37, ¶ 11, 713 N.W.2d 580, 586.

---

\* As part of the plea agreement, the State dismissed the remaining charges.

## ANALYSIS

[¶14.]    The United States Supreme Court has held that "[w]hen an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel.  For this reason, in order to represent himself, the accused must knowingly and intelligently forgo those relinquished benefits." *Faretta v. California*, 422 U.S. 806, 835, 95 S. Ct. 2525, 2541, 45 L. Ed. 2d 562 (1975).  Accordingly, this Court has held that "[i]n order for a defendant to exercise the right to self-representation and waive the right to representation by counsel, a voluntary, knowing and intelligent waiver must be made by the defendant." *Asmussen*, 2006 S.D. 37, ¶ 30, 713 N.W.2d at 590.

[¶15.]    We have stated that, at a minimum, a defendant

> must be aware of the dangers and disadvantages of self-representation.  On appeal, waiver of the right to counsel will not be found knowingly and intelligently made unless the trial court (1) warns the defendant of the dangers of self-representation or, (2) unless the record indicates circumstances from which this court can find the defendant was aware of the danger and made a knowing and intelligent waiver.  While in some cases there may be a record showing a defendant is aware of the pitfalls of self-representation, an admonition from the trial court is preferred as it eliminates any doubt.

*Bruch*, 1997 S.D. 74, ¶ 15, 565 N.W.2d at 792 (quoting *State v. Van Sickle*, 411 N.W.2d 665, 667 (S.D. 1987)).

[¶16.]    This Court has suggested that a trial court warn a defendant of five factors in order to determine if "he knows what he is doing and his choice is made with eyes open." *State v. Raymond* (*Raymond II*), 1997 S.D. 59, ¶ 11, 563 N.W.2d

823, 826 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S. Ct. 236, 242, 87 L. Ed. 2d 268 (1942)). Those factors are:

> (1) that presenting a defense is not a simple matter of telling one's story, but requires adherence to various technical rules governing the conduct of a trial;
> (2) that a lawyer has substantial experience and training in trial procedure and that the prosecution will be represented by an experienced attorney;
> (3) that a person unfamiliar with legal procedures may allow the prosecutor an advantage by failing to make objections to inadmissible evidence, may not make effective use of such rights as the voir dire of jurors, and may make tactical decisions that produce unintended consequences;
> (4) that a defendant proceeding pro se will not be allowed to complain on appeal about the competency of his representation; and
> (5) that the effectiveness of his defense may well be diminished by his dual role as attorney and accused.

*State v. Patten*, 2005 S.D. 32, ¶ 10, 694 N.W.2d 270, 273; *see also Raymond II*, 1997 S.D. 59, ¶ 12, 563 N.W.2d at 826; *Van Sickle*, 411 N.W.2d at 666-67. It is undisputed that the court did not advise Hirning of these five factors.

[¶17.]     We have also stated that, as an alternative to the five factors, a waiver may be constitutionally acceptable "as long as there are circumstances present that indicate the circuit court was able to ascertain that the defendant was fully aware of the dangers of self-representation." *Asmussen*, 2006 S.D. 37, ¶ 31, 713 N.W.2d at 590. Such a determination depends upon the particular facts and circumstances surrounding each case, including the background, experience, and conduct of the accused. *Id. See also Van Sickle*, 411 N.W.2d at 667 (considering factors such as defendant's involvement in previous criminal trials, representation by counsel before trial, and the explanation of reasons for proceeding pro se). The court did not

inquire on the record into Hirning's background or experience, either legal or personal. The court only inquired into the reasons for Hirning's dismissal of Jung, which Hirning indicated was primarily because of Jung's refusal to file the request for a bill of particulars.

[¶18.] While this Court has previously indicated that "we must place some faith in the trial court's decision to allow defendant to proceed without counsel," *Raymond II*, 1997 S.D. 59, ¶ 15, 563 N.W.2d at 827 (quoting *State v. Miller*, 248 N.W.2d 61, 61 (S.D. 1976)), we have also stated that "[a] defendant's request to represent [himself] must be unequivocal in nature," *Patten*, 2005 S.D. 32, ¶ 10, 694 N.W.2d at 273 (quoting *State v. Chamley*, 1997 S.D. 107, ¶ 35, 568 N.W.2d 607, 618). In this case, the record does not support that Hirning made a voluntary, knowing, and intelligent waiver of his right to counsel.

[¶19.] When asked if he was going to represent himself, Hirning's responses were equivocal. He stated, "I *guess* so, Your Honor, yes," and "I *guess* I will have to." At several hearings, Hiring repeatedly informed the court he was trying to find another attorney through letters and detailed his lack of success in replacing Jung. As both Hirning and Jung stated in court, the problems they were having were disagreements on how to proceed, rather than a situation where Hirning did not want the assistance of any counsel. A central problem was Hirning's desire to file (and appeal any denial of) a request for a bill of particulars, and Jung's refusal to do so. While the court did explore this reason, the court granted Jung's motion to withdraw before denying Hirning's request for a bill of particulars. After the denial, the court did not revisit the possibility of Jung's continued representation in light of

its decision on the bill of particulars request. There were also several discussions between Hiring and the court about whether he could have court-appointed counsel. The record is unclear what actions were taken in this area.

[¶20.] Furthermore, even after Jung's motion to dismiss was granted, Hirning told the court he had "never handled a jury trial before" and did not have the discovery materials. Hirning also asked three times at the August 13, 2010 hearing if he could contact Mr. Fishbach to help him negotiate a plea, indicating he was reluctant to negotiate a plea by himself. The court even agreed that it was a good idea to have an attorney present to assist in reaching a plea. Finally, Hirning asked the court if he could have counsel for sentencing.

[¶21.] From this record, it is apparent that Hirning wanted the assistance of an attorney, if not Jung, at every step. He repeatedly stated he was trying to find an attorney. While we appreciate the trial court's effort to keep the trial date and avoid repeated continuances, this record does not indicate that Hirning made a voluntary, knowing, and intelligent waiver of counsel.

### CONCLUSION

[¶22.] Because Hirning was not warned of the dangers of self-representation and the record does not indicates circumstances from which this Court can find Hirning was aware of the danger and made a voluntary, knowing, and intelligent waiver, we reverse and remand.

[¶23.] KONENKAMP, ZINTER, and SEVERSON, Justices, and MEIERHENRY, Retired Justice, concur.

[¶24.] WILBUR, Justice, did not participate.