#30374-a-JMK
**2025 S.D. 28**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

v.

SAMMY BRYANT SHEPLEY,                    Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE M. BRIDGET MAYER
Judge

\* \* \* \*

CATHERINE A. SEELEY of
Gunderson, Palmer, Nelson
   & Ashmore, LLP
Pierre, South Dakota                    Attorneys for defendant and
                                       appellant.


MARTY J. JACKLEY
Attorney General

JOHN M. STROHMAN
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff and
                                       appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
AUGUST 27, 2024
OPINION FILED **06/11/25**

#30374

KERN, Justice

[¶1.] Sammy Shepley, acting pro se, pled no contest to the charge of failing to provide notice of new address as a registered sex offender and entered an admission to a part II information alleging that he was a habitual offender. He was sentenced to a suspended five-year penitentiary sentence with two years of probation. Shepley appeals contending the circuit court failed to adequately advise him of the risks of self-representation and that the court abused its discretion by denying his request for appointment of substitute counsel to represent him. We affirm.

## Factual and Procedural Background

[¶2.] Shepley was convicted of an offense in 1988 which required him to register as a sex offender in South Dakota. As a registered sex offender, Shepley is required to comply with the provisions of SDCL chapter 22-24B, which include restrictions on where Shepley can reside and a requirement that Shepley inform law enforcement when his place of residence changes. On August 31, 2022, Detective Kaitlyn Cummings with the Pierre Police Department was informed that Shepley was not living at his registered address in Pierre, but rather was living with his wife whose home was located within a community safety zone.[1] During her investigation, Detective Cummings reviewed camera footage from Shepley's apartment building over a six-day period which showed Shepley entering and

---

1. A community safety zone is "the measurement of a straight line that creates an area that lies within five hundred feet from the facilities and grounds of any school, public park, public playground, domestic abuse shelter, sexual assault shelter, or public pool, including the facilities and grounds itself[.]" SDCL 22-24B-22(1).

leaving his apartment through the front door. Based on this footage, Detective Cummings concluded that Shepley spent only five minutes in his apartment over the six-day observation period. Shepley was also observed at his wife's residence during the day.

[¶3.] Shepley was arrested on September 12, 2022, and subsequently indicted by a Hughes County grand jury on two counts: failure to provide new address for sex offender registry, in violation of SDCL 22-24B-12, and sex offender living in a community safety zone, in violation of SDCL 22-24B-23. A part II habitual offender information was also filed that same day alleging that Shepley had two prior felony convictions including a 2016 conviction for failing to register a new address in Codington County.

[¶4.] Shepley applied for court-appointed counsel and the circuit court appointed attorney Katie Thompson on September 15, 2022. Less than two weeks later, Thompson filed a motion to withdraw citing a breakdown in the attorney-client relationship alleging that Shepley "made statements and accusations to counsel which [led] her to believe that a productive attorney/client relationship [was] not possible."[2] The circuit court granted Thompson's motion on September 28 without a hearing and appointed attorney Cody Honeywell as substitute counsel. Honeywell represented Shepley at his arraignment on November 29, 2022, during which Shepley entered not guilty pleas.

---

2. During a later hearing, Shepley accused attorney Thompson of redacting a portion of the discovery material supplied to him.

#30374

[¶5.]    Honeywell filed a motion to withdraw as counsel on January 18, 2023, stating, "[t]his motion is based upon the wishes of Defendant, who intends to proceed *pro se*." During a motions hearing held the same day, Honeywell asked that Shepley be permitted to address the court regarding the motion for withdrawal. Shepley told the circuit court, "This is the second attorney I received. The first one I received, my discovery had been tampered with and things had been whited out on it. I've never seen new discovery. We constantly argue. I will wing it. I'll go on my own and wing it. All I have to do is come in this courtroom with the truth and I am faithful in that."

[¶6.]    In order to evaluate Shepley's request, the circuit court inquired about Shepley's education, to which Shepley responded, "I graduated." The circuit court then advised:

| | |
|---|---|
| THE COURT: | Okay. What I will tell you is the State's Attorney there has been to law school. She's an experienced prosecutor -- |
| THE DEFENDANT: | I get it. |
| THE COURT: | My turn. Okay? She knows how to make arguments, cites the law, can make all kinds of motions and objections. I can't be your lawyer. I have to be the umpire, so to speak, in the courtroom so you could be placed at a terribly unfair advantage. |

[¶7.]    Shepley expressed frustration that Honeywell did not prepare motions for the hearing and that he had not been provided with the grand jury transcript. The court asked:

Would you like to order a transcript? You can but then you have to pay for that. A lot of times what's in the grand jury is what's in the report. So if you want him to -- if you want that, if you're going to go it alone -- I'm not going to give you a third lawyer. I'm just not.

Shepley responded, "No, I'm just going to wing it. I think if it's peaceful, I can just contact and talk to the State." Alternatively, the circuit court informed Shepley that it could appoint Honeywell as standby counsel:

| | |
|---|---|
| THE COURT: | All right. The other thing I can do, if you want, is to let you run the show. If this doesn't settle with the State and you want to do your own negotiations, that's fine. I would merely keep Mr. Honeywell on in case you do change your mind about some offer [the State] makes, or if you end up in trial and you're not sure about what's going on, you at least have a lawyer to consult with because I can't appoint a lawyer during trial and expect some lawyer out of the crowd to come and help you. That won't happen and you can't complain to the South Dakota Supreme Court -- |
| THE DEFENDANT: | Ma'am -- |
| THE COURT: | -- because you didn't have a lawyer. |
| THE DEFENDANT: | Listen, listen. This original charge is 30 -- I have been going through this, especially in the state of South Dakota with these failure [sic] to register, a lot. I understand how it works, what goes on. I've been through it. I've been through it in another state. You know, all you have to do is show up and prove the truth. That's all you have to do.<br><br>I would like some assistance but I mean I can't -- Mr. Honeywell and I, |

we can't -- I looked on there how many phone calls. There's like 20 phone calls of us just arguing and all I'm trying to do is say that, hey, not everything was presented to this grand jury.

THE COURT: They don't have to present everything.

THE DEFENDANT: I understand that but they weren't honest. If that's the case, then they weren't honest with the grand jury.

THE COURT: All right. Well, here's the deal. I can't force you to have a lawyer. Mr. Honeywell is a well-known, well-respected lawyer in a very big law firm.

THE DEFENDANT: I understand that.

THE COURT: It's my turn. I can't force you to have legal counsel. So my question to you is, if Mr. Honeywell is willing to sit in a courtroom in case you did want some assistance if this went to trial, I would authorize him to stay on but I'm not going to give you another lawyer.

So if you don't -- if Mr. Honeywell says, no -- I think he's got the ability to set aside any differences that you have. But if you need someone that's familiar with the evidence rules, that's familiar with the cases, that's familiar with your file, it's him or it's no one. And I haven't asked him yet if he's willing to do that because they're busy lawyers. They're helping other people and you're busy. So what do you want to do? Do you want --

> THE DEFENDANT: It would be up to him. I just don't want to argue with him about the case no more.

[¶8.]     The court asked Honeywell whether he would be willing to serve as standby counsel. Honeywell stated:

> Your Honor, I will say yes, I am willing to do that. I will note for the [c]ourt that I don't know -- I don't know if I would be effective standby counsel given our previous discussions. I don't agree with what Mr. Shepley has completely said.
>
> I will say that we definitely -- Mr. Shepley thinks the case should go in a different way than I think we should proceed and so I don't know if arguing is the word that I would use. But given our past conversations, I'm not sure how effective I would be. If the [c]ourt deems it appropriate to make me standby counsel, I won't object to that, though, I suppose.

The court granted Honeywell's request to withdraw as primary counsel and signed an order to that effect. The court permitted Shepley to proceed pro se but also appointed Honeywell to serve as standby counsel. Honeywell indicated that he would provide Shepley with an unredacted copy of the discovery and a thumb drive containing the audio and video recordings provided by the State. The court informed Shepley that he could contact the State directly to negotiate a plea agreement if he wished to do so. Further, the court provided Shepley with a trial date in case he was unable to reach an agreement and ordered the State to provide him with a copy of the pretrial order.

[¶9.]     Speaking to Shepley, the circuit court stated, "And you now need to file any motions that you have. You're running the show here. Okay? And you will get with [the State] first because you said you want to maybe negotiate with her directly so I will allow you to do that. You're a man that speaks his own mind.

That's totally fine. I've talked to you about the pitfalls of self-representation and you're fine with that and you do have experience in the criminal justice system. I'll call the rules as I see them, but I can't advocate for you. Okay?"

[¶10.] At the conclusion of the hearing, having changed Honeywell's role in the case to that of stand-by counsel, the circuit court instructed him to provide Shepley with a copy of *State v. Van Sickle*, 411 N.W.2d 665 (S.D. 1987), which sets forth the dangers and disadvantages of self-representation, so "he can't complain about [it] later and all the things he's waiving by not having a lawyer zealously advocate for him." However, the record does not confirm whether Shepley received or read a copy of the opinion.

[¶11.] The relationship between Honeywell and Shepley was not successful, and on February 13, 2023, Honeywell filed a motion to withdraw averring that Shepley made statements to him that created a conflict of interest regarding his continued representation. In a letter to the circuit court dated February 23, 2023, Shepley wrote:

> I'm sending you this letter in apology.
> I in no way meant to overstep boundaries or rules you [and] the court have set forth.
> I had assumed Mr. Cody Honeywell had notified you previous to my last court appearance; that I would be motioning for counsel.
> I was mistaken [and] I truley [sic] apologi[z]e.

The record indicates that the letter was received on February 27 and filed on March 2 copying the State and court services. It does not appear that the circuit court responded to the letter.

[¶12.] On February 28, the circuit court heard Honeywell's motion to withdraw and Shepley's request to change his plea. Regarding the motion to

withdraw, Honeywell asserted that there had been an irretrievable breakdown in his relationship with Shepley and that he had ethical concerns about continuing to represent him. Honeywell asked that he be immediately removed as standby counsel rather than continuing to assist Shepley in his desire to change his plea. The court asked Shepley if he wished to continue to represent himself, inquiring, "And you feel that you've got it resolved on your own and want to persist in representing yourself; right?" Shepley responded "[y]es, ma'am." Shepley did not mention the letter dated February 23, 2023, or request the appointment of new counsel. The court granted Honeywell's motion to withdraw.

[¶13.] The State informed the court that it had reached a plea agreement with Shepley which included a recommendation for a probationary sentence. The circuit court informed Shepley of the elements of the offense that the State would have the burden of proving at trial. In addition, the court informed Shepley that the maximum penalty for the offense of failing to register, a Class 6 felony, was up to two years in the penitentiary and/or a $4,000 fine. With reference to the part II information, the court informed Shepley that if he admitted to being a habitual offender, the maximum penalty would increase to five years in the penitentiary and/or a $10,000 fine.

[¶14.] Pursuant to the terms of the agreement, Shepley then entered a no contest plea to count 1 of the indictment, charging him with failing to provide a new address for sex offender registration. Shepley also entered an admission to the part II information alleging he had been convicted of two prior felonies. After Shepley

entered his plea and admission, the following exchange occurred regarding

Shepley's decision to continue to proceed pro se:

> THE COURT: And as you were told in other cases and I believe with this court, you're continuing to appear pro se and that's meaning you want to represent yourself and that's still your cause [sic] today that you want to continue representing yourself?
>
> THE DEFENDANT: Yes.
>
> THE COURT: All right. Because as you know and as you've seen, lawyers can argue for you and make your arguments and talk about strategy and make sure your rights are being followed and advocate for you and talk over any issues you have with you. But you're waiving that; correct?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Is that right?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And I can't make you have a lawyer and the Supreme Court on appeal, if you say, well, wait a minute, I didn't have a lawyer, they're not going to -- they're going to say, well, you told him it's not maybe in his best interests and he gets to waive that and he did. So is that correct?
>
> THE DEFENDANT: Yeah.

[¶15.] The circuit court reviewed with Shepley his constitutional and

statutory rights and Shepley stated that he understood the rights that he was

waiving. The court found that Shepley freely and intelligently waived his rights

and knowingly and voluntarily entered a plea of no contest and an admission to the part II information. The court ordered an updated presentence investigation report and scheduled a sentencing hearing.

[¶16.] Shepley appeared for sentencing on May 9, 2023. Prior to imposing sentence, the circuit court asked Shepley if he wished to continue to represent himself, to which he responded, "[w]ell, yeah." The court asked Shepley if he had additions or corrections to the presentence report. He indicated that his income had decreased because his social security payment was reduced. The court noted the change. The State referenced a three-page letter Shepley had submitted from his wife which the court had received and reread during the hearing. The court informed Shepley that "[i]f a lawyer were here, they would argue on your behalf and [highlight] all the positive things you're doing." When asked what sentence he wished to receive from the court, Shepley stated, "I'm just asking for what the State offered." Shepley also asked if his wife could make a statement on his behalf, which the court permitted. Consistent with the State's recommendation, the court sentenced Shepley to a five-year penitentiary term suspending the execution of the sentence and placing Shepley on probation for two years under a number of terms and conditions.

[¶17.] Shepley appealed and filed a *Korth* brief raising issues related to the grand jury proceedings, ineffective assistance of counsel, and the circuit court's refusal to appoint a third attorney to represent him. The State filed a responsive brief to which Shepley filed a reply brief. After reviewing Shepley's reply brief, this Court determined it did not conform with *Korth* procedure because it provided legal

authority and argument in support of Shepley's issues. This Court, citing *State v. Kwai*, 2023 S.D. 42, ¶ 15, 994 N.W.2d 712, 716, rejected Shepley's briefs noting that "if there are issues in the case that counsel believes are meritorious," counsel is to "abandon the *Korth* procedure and brief and argue those issues as in any other criminal appeal."

[¶18.] Having identified potentially meritorious issues in Shepley's submissions that required additional briefing, we ordered simultaneous briefs from the parties on the following issues:

> 1. Whether the circuit court adequately advised Shepley of the risks of self-representation.
>
> 2. Whether the circuit court erred in denying Shepley's request for appointment of substitute counsel to represent him.

[¶19.] Having considered the briefs, we restate the issue as follows:

> 1. Whether the circuit court erred by accepting Shepley's uncounseled guilty plea based upon its determination that Shepley's waiver of counsel was knowing and voluntary.

**Analysis**

[¶20.] "The defendant in a criminal action has both a constitutional right to be represented by counsel and a constitutional right to represent himself, whichever he chooses." *Van Sickle*, 411 N.W.2d at 666 (citing *Faretta v. California*, 422 U.S. 806 (1975)). We review claims asserting infringement of a constitutional right de novo. *State v. Asmussen*, 2006 S.D. 37, ¶ 11, 713 N.W.2d 580, 586.

[¶21.] "When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must 'knowingly

and intelligently' forgo those relinquished benefits." *Faretta*, 422 U.S. at 835

(citation omitted). "Accordingly, this Court has held that '[i]n order for a defendant

to exercise the right to self-representation and waive the right to representation by

counsel, a voluntary, knowing and intelligent waiver must be made by the

defendant.'" *State v. Hirning*, 2011 S.D. 59, ¶ 14, 804 N.W.2d 422, 426 (alteration

in original) (quoting *Asmussen*, 2006 S.D. 37, ¶ 30, 713 N.W.2d at 590). At a

minimum, a defendant

> must be aware of the dangers and disadvantages of self-
> representation. On appeal, waiver of the right to counsel will
> not be found knowingly and intelligently made unless the trial
> court (1) warns the defendant of the dangers of self-
> representation or, (2) unless the record indicates circumstances
> from which this court can find the defendant was aware of the
> danger and made a knowing and intelligent waiver. While in
> some cases there may be a record showing a defendant is aware
> of the pitfalls of self-representation, an admonition from the
> trial court is preferred as it eliminates any doubt.

*Id.* ¶ 15, 804 N.W.2d at 426.

[¶22.] As it relates specifically to the waiver of trial counsel, we have

suggested that a trial court warn a defendant of five factors gleaned from *Faretta v.*

*California* to determine if the defendant is making his choice with "eyes open":

> (1) that presenting a defense is not a simple matter of telling
> one's story, but requires adherence to various technical rules
> governing the conduct of a trial; (2) that a lawyer has
> substantial experience and training in trial procedure and that
> the prosecution will be represented by an experienced attorney;
> (3) that a person unfamiliar with legal procedures may allow the
> prosecutor an advantage by failing to make objections to
> inadmissible evidence, may not make effective use of such rights
> as the voir dire of jurors, and may make tactical decisions that
> produce unintended consequences; (4) that a defendant
> proceeding pro se will not be allowed to complain on appeal
> about the competency of his representation; and (5) that the

effectiveness of his defense may well be diminished by his dual role as attorney and accused.

*Hirning*, 2011 S.D. 59, ¶ 16, 804 N.W.2d at 426. Further, in order for a waiver to be valid, "[a] defendant's request to represent [himself] must be unequivocal in nature." *State v. Patten*, 2005 S.D. 32, ¶ 10, 694 N.W.2d 270, 273 (citation omitted).

[¶23.] While the *Faretta* warnings are particularly well-suited to inform a defendant's decision to proceed pro se at a trial, "a less searching or formal colloquy may suffice" at earlier stages of the proceedings. *Iowa v. Tovar*, 541 U.S. 77, 89 (2004) (citing *Patterson v. Illinois*, 487 U.S. 285, 299 (1988)).[3] This is "not because pretrial proceedings are 'less important' than trial, but because, at that stage, 'the full dangers and disadvantages of self-representation . . . are less substantial and more obvious to an accused than they are at trial.'" *Id.* at 90 (alteration in original) (quoting *Patterson*, 487 U.S. at 299).

[¶24.] In *Iowa v. Tovar*, the United States Supreme Court held that a defendant could validly waive his right to counsel and plead guilty even without specific admonitions from the trial court about the risk that a pro se lay defendant might overlook viable defenses and would lack the benefit of an attorney's "independent opinion on whether, under the facts and applicable law, it is wise to plead guilty." 541 U.S. at 91. In the specific context of the guilty plea proceeding at

---

3.  Prior to *Tovar*, we also referenced the relevance of the stage of the proceedings when examining the voluntariness of a waiver of counsel. In *State v. Cashman*, we acknowledged that while advisement of the *Faretta* factors "might be of use to a defendant considering proceeding pro se *at trial*, it might only serve to confuse a defendant making a decision to waive counsel in the earlier stages of the criminal process where such warnings are inapplicable." 491 N.W.2d 462, 464 (S.D. 1992).

issue in *Tovar*, the Supreme Court held that, "[t]he constitutional requirement is satisfied when the trial court informs the accused of the nature of the charges against him, of his right to be counseled regarding his plea, and of the range of allowable punishments attendant upon the entry of a guilty plea." *Id.* at 81. In doing so, *Tovar* rejected a "scripted admonitions" approach and reinforced "that the information a defendant must have to waive counsel intelligently will 'depend, in each case, upon the particular facts and circumstances surrounding that case[.]'" *Id.* at 92 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). The Court emphasized that:

> We have not, however, prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel. The information a defendant must possess in order to make an intelligent election, our decisions indicate, will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding.

*Id.* at 88.

[¶25.] "If [the defendant] . . . lacked a full and complete appreciation of all of the consequences flowing from his waiver, it does not defeat the State's showing that the information it provided to him satisfied the constitutional minimum." *Id.* at 92 (alteration in original) (quoting *Patterson*, 487 U.S. at 294). Nonetheless, a defendant "must be warned specifically of the hazards ahead" and, "in order [to] competently and intelligently . . . choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing[.]" *Id.* at 88–89 (quoting *Faretta*, 422 U.S. at 835).

*Risks of Self-Representation*

[¶26.]        Shepley first argues that he was not adequately informed of the risks of self-representation.  It is undisputed that the circuit court did not provide a verbatim advisory of the *Faretta* factors adopted by this Court in *Van Sickle*.[4]  Thus, we must determine whether the record demonstrates a knowing, voluntary, and intelligent waiver of counsel by Shepley.

[¶27.]        After Honeywell filed a motion to withdraw and Shepley indicated his intention to proceed without counsel, the circuit court informed Shepley that the State was represented by a trained attorney who knew how to cite the law, make motions and objections, and craft legal arguments.  The circuit court also told Shepley that it could not serve as Shepley's attorney and that Shepley "could be placed at a terribly unfair advantage" by proceeding pro se.

[¶28.]        The court also suggested that Shepley could consider proceeding on his own with the assistance of Honeywell as standby counsel.  But the court warned that if he did so he could not later complain on appeal about the ineffective assistance of his counsel if he chose to represent himself.  Shepley told the court

---

4.    As noted above, after granting Honeywell's motion to withdraw the circuit court requested that Honeywell provide Shepley with a copy of *State v. Van Sickle*, 411 N.W.2d 665 (S.D. 1987).  However, a circuit court cannot rely upon counsel to advise his client of the risks of self-representation described in *Faretta*.  It is the circuit court's unique responsibility to advise a defendant of the dangers of self-representation and to ensure that any such waiver of the right to counsel be made knowingly and voluntarily.  Indeed "[a] court must 'indulge in every reasonable presumption against [a defendant's] waiver' of his right to counsel and require the defendant to make a knowing, intelligent, voluntary, and unequivocal request before concluding that he has waived his right to counsel and invoked his right to represent himself." *State v. Irvine*, 1996 S.D. 43, ¶ 18, 547 N.W.2d 177, 182 (second alteration in original) (quoting *Hamilton v. Groose*, 28 F.3d 859, 861–62 (8th Cir. 1994)).

that he had been charged many times with offenses relating to his sex offender registration and "I understand how it works, what goes on. I've been through it." At the conclusion of the hearing the court reminded Shepley "[y]ou're running the show here . . . I've talked to you about the pitfalls of self-representation and you're fine with that[.]"

[¶29.] Subsequently, before both his plea hearing and sentencing, the court inquired and Shepley affirmatively stated that he wished to proceed without counsel. Before Shepley changed his plea, the court again reminded him that an attorney could assist him in moving forward with a plea, make arguments on his behalf, and advocate for him, and that Shepley could not later complain on appeal if he did not like the end result of the proceedings. The court also informed him of his right to be represented, the nature and elements of the charge, and the maximum penalty that he could be subjected to. The record also shows that Shepley had extensive experience in the criminal justice system and specific experience with the offense of failing to update his address for the sex offender registry. Shepley's criminal history includes five prior felony convictions, a history of mandatory registration as a sex offender for over 35 years, and several prior arrests for failing to register. Further, Shepley demonstrated his familiarity with the criminal justice system through his active participation in his defense prior to Honeywell's withdrawal.

[¶30.] Shepley contends the circuit court erred by relying on his prior criminal justice experience and the favorable plea bargain he obtained—which included the State's recommendation for a probationary sentence—in concluding

that he was aware of the pitfalls of self-representation. To support his argument, he points to *Berry v. Lockhart*, 873 F.2d 1168 (8th Cir. 1989). However, *Berry* is factually distinguishable. There, after the relationship between Berry and his court appointed counsel deteriorated, Berry asked to retain an attorney. The court asked Berry if he wanted to continue with the assistance of his court-appointed counsel and Berry again repeated his request to be permitted to retain new counsel. When the court asked if Berry wanted to represent himself, Berry replied that "he was not qualified to represent himself." *Id.* at 1170. Regardless, the court appointed standby counsel and Berry represented himself during trial, resulting in a conviction on both counts.

[¶31.] The Eighth Circuit affirmed the court's grant of habeas corpus relief to Berry, concluding that Berry did not make a knowing and intelligent waiver of his right to counsel. The court noted that the record did not indicate that the trial court looked at Berry's knowledge of criminal procedure, nor did it advise Berry of the perils of proceeding pro se. Even so, the critical aspect of the court's determination was that "Berry never agreed to proceed on his own behalf. He steadfastly asked for counsel. Outright denial of counsel cannot be harmless error." *Id.* at 1171.

[¶32.] Here, Shepley did not repeatedly ask for counsel, or openly express his inability to represent himself. Instead, he asked to represent himself and to negotiate with the State directly to reach a plea agreement. He assured the circuit court that he "understand[s] how it works, what goes on." Unlike *Berry*, these facts are not used as an after-the-fact attempt to justify the denial of counsel. Considering the circuit court's advisements, Shepley's statements regarding his

understanding of the charge and his rights, his prior experience with the system, and his education we conclude that Shepley was aware of the dangers of self-representation.

### *Unequivocal request for self-representation*

[¶33.] Shepley also asserts that he did not unequivocally request to represent himself. "[A] defendant's request to represent [himself] must be unequivocal in nature." *Patten,* 2005 S.D. 32, ¶ 10, 694 N.W.2d at 273 (first alteration in original) (citation omitted). In *Patten*, we reversed the defendant's conviction because "the trial court did not advise [the defendant] of the dangers of proceeding *pro se* and the record did not indicate any interest by the defendant in proceeding without counsel." *Id.* ¶ 11, 694 N.W.2d at 273. During her arraignment, Patten informed the court that she did not have counsel but wished to be represented. Patten applied for court appointed counsel, but the request was denied because the court did not believe she was indigent. Patten represented herself during a motions hearing and during trial, which occurred less than one month after indictment. On neither occasion did the court inquire about her legal representation or inform her of the dangers of proceeding pro se. Similarly, we concluded in *Hirning* that the defendant did not unequivocally request to represent himself when he repeatedly informed the court that he was attempting to retain new counsel and stated, "I *guess* so, Your Honor, yes," and "I *guess* I will have to" in response to the circuit court's inquiry into his request for self-representation. 2011 S.D. 59, ¶ 19, 804 N.W.2d at 427.

[¶34.]    In contrast, when Honeywell filed his initial motion to withdraw as counsel, the motion stated it was, "based upon the wishes of [Shepley], who intends to proceed *pro se*." During the hearing, Shepley also expressed an understanding and intention to represent himself in the proceedings. He made no request for counsel during the hearing.

[¶35.]    Shepley points to his February 23 letter to the circuit court where he expressed that he believed Honeywell "had notified you previous to my last court appearance; that I would be motioning for counsel." However, Shepley did not file a motion for counsel or bring his desire for counsel to the court's attention. Additionally, he did not reapply for court appointed counsel, even though he knew how to do so.[5] Most importantly, Shepley's statements during his subsequent plea hearing and sentencing hearing demonstrate his unequivocal desire to represent himself. During the plea hearing, the circuit court asked, "And you feel that you've got it resolved on your own and want to persist in representing yourself; right?" Shepley responded, "Yes, ma'am." Again, during the sentencing hearing, the court asked, "I know you're representing yourself and you still want to continue on with your self-representation?" to which Shepley responded, "Well, yeah." Based on our review of the hearing transcripts, it is evident that Shepley unequivocally requested to represent himself and to contact the State directly to negotiate a potential plea agreement.

---

5.    Shepley filed an application for court appointed counsel on September 15, 2022, early in the case. Further, after sentencing, Shepley filed an application for appellate counsel on June 1, 2023.

*Appointment of substitute counsel*

[¶36.]     Shepley finally contends that he was not given the opportunity to establish good cause for his request for new counsel and that the circuit court abused its discretion by denying his request for the same.  "[A]ppointment of substitute counsel is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process."  *State v. Abraham-Medved*, 2024 S.D. 14, ¶ 16, 4 N.W.3d 436, 441 (citation omitted).  The defendant carries the burden to demonstrate good cause for a change of counsel and "must be given an opportunity to 'present his "good cause" justifying a change in counsel.'"  *Id.* ¶ 17 (quoting *State v. Talarico*, 2003 S.D. 41, ¶ 23, 661 N.W.2d 11, 20).  "We review a court's decision on a request for substitution of counsel for an abuse of discretion."  *State v. Martinez*, 2016 S.D. 49, ¶ 15, 882 N.W.2d 731, 735.

[¶37.]     Here, Shepley was afforded the opportunity to fully explain the bases for his discontent with Honeywell's representation and the circuit court allowed Honeywell to withdraw.  However, the court was not presented with a written or oral motion for substitute counsel, nor did Shepley ask for new counsel during any of the hearings following Honeywell's withdrawal.  In light of Shepley's unequivocal requests to represent himself, we conclude that the circuit court did not abuse its discretion by failing to appoint substitute counsel.

[¶38.]     In conclusion we reiterate, as we have on prior occasions, that although a "warning is not constitutionally necessary where other circumstances indicate [the] defendant was aware of the dangers [of] self-representation[,]" *Van Sickle*, 411 N.W.2d at 667, the better practice is to specifically advise the defendant

of the relevant pitfalls of self-representation considering the stage of the proceedings as set forth in *Faretta* and *Tovar*. If a defendant persists in representing himself, the court should then engage the defendant in an "on-the-record" discussion to ensure that the defendant understands the "disadvantages and consequences of self-representation." *Id.* at 668 (Miller, J., concurring). If the court determines the defendant's waiver of his right to counsel was knowingly and intelligently made, it should make a factual finding to this effect either on the record or in writing. *Id.*

## Conclusion

[¶39.]      After examining the circuit court's colloquies with Shepley and the circumstances of this case, we conclude that the court did not err in its determination that Shepley was fully aware of the dangers of self-representation and made a voluntary, knowing, and intelligent waiver of his right to counsel. We affirm.

[¶40.]      JENSEN, Chief Justice, and SALTER, DEVANEY, and MYREN, Justices, concur.